AARON FORD
  Attorney General
SOPHIA G. LONG (Bar No. 8549)
  Senior Deputy Attorney General
LOUIS V. CSOKA (Bar No. 7667)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
(702)486-3165 (phone)
(702) 486-3416 (fax)
slong@ag.nv.gov

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LUCERO SANCHEZ, | Case No.  3:21-cv-00352-MMD-CSD |
| Plaintiff(s), | **NON-PARTY NERC'S EMERGENCY MOTION TO QUASH SUBPEONA** |
| vs. | |
| RENOWN HEALTH, a non-profit Nevada corporation, and DOES 1-20 inclusive, | |
| Defendant(s). | |

Non-party the Nevada Equal Rights Commission ("NERC") files this emergency motion to quash Defendant Renown's subpoena of the witness testimony of NERC Investigator Richard Brown.

On Friday, September 30, 2022, Investigator Brown received a subpoena from Defendant Renown Health ("Renown") requesting his appearance at a deposition scheduled for October 25, 2022. Renown intends to question Investigator Brown about his investigation of Plaintiff Lucero Sanchez's NERC charge against Renown. Specifically, the issuance of his PROBABLE CAUSE determination letter. Investigator Brown investigated Plaintiff Lucero's NERC charge about four years ago.

By this motion, NERC respectfully requests the court quash Renown's subpoena of Investigator Brown because any testimony would only produce information that is cumulative and duplicative, will not lead to the discovery of admissible evidence, a less intrusive alternative means of discovery exist, the information sought is not discoverable

1    as it is protected from disclosure under the government deliberative process privilege, and

2    appearing for the deposition would create an undue burden on NERC. *See* FED. R. CIV. P.

3    26(b)(2)(C), 45(c)(1), and 45(d)(1).

4        By this motion, NERC also requests a protective order prohibiting any parties from

5    taking any action to compel the appearance of Investigator Brown. *See* FED. R. CIV. P.

6    26(c).

7                                    **Background**

8        NERC has standing to bring this motion, both as Investigator Brown's employer and

9    the agency with responsibility over the investigation. NERC is not a party to the lawsuit

10   underlying the subpoena at issue here. However, on September 30, 2022, Investigator

11   Bronw received a subpoena from Renown requesting him to appear and provide testimony

12   for a deposition scheduled for October 25, 2022. *See* Ex. A (Subpoena).

13       On or about January 8, 2018, Plaintiff filed a complaint with NERC alleging

14   discrimination based on age, national origin (Hispanic), and retaliation in violation of Title

15   VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., Americans with

16   Disabilities Act of 1990, as amended (ADAAA), and Nevada laws from her supervisors at

17   her place of employment, Renown Health.[1] Investigator Brown investigated Plaintiff's

18   NERC charge. On or about April 20, 2021, Investigator Brown found in favor of Plaintiff

19   and issued a PROBABLE CAUSE finding for disability discrimination. Subsequently, the

20   case was closed with NERC and per NERC's workshare agreement with the Equal

21   Employment Opportunity Commission ("EEOC"), the case was sent to EEOC who issued a

22   Right to Sue[2].

23       Renown sent a subpoena to NERC to depose Investigator Brown about facts

24   regarding his investigation of Plaintiff's charge of discrimination. Pursuant to case law,

---

[1] NERC and EEOC archived the investigative file, therefore, I do not have access to the initial complaint for an exhibit.

[2] NERC is a Fair Employment Practices Agency ("FEPA") partner with NERC, therefore, the allegation is covered by a law enforced by the EEOC, the FEPA will dual file the charge with EEOC (meaning EEOC will receive a copy of the charge), but will usually retain the charge for processing.

1  NERC would not permit staff, including investigators, to participate in litigation after the

2  case has been closed with the administrative agency. *See* NRS 233.190(4)(b) and (c).

## II.    ARGUMENT

**A.    The Court Should Grant NERC's Motion to Quash Renown's Subpoena because It Seeks Information That Is Duplicative and Cumulative, Can Be Obtained from a More Convenient Source, and Imposes an Undue Burden.**

FED. R. CIV. P. 26(b)(2)(C)(i) prohibits discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 45 (d) (1) states that:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

FED. R. CIV. P. 45(d)(3)(A)(iv) further specifies that a court must grant a motion to quash where a subpoena "subjects a person to undue burden." In sum, a motion to quash a subpoena should be granted if the subpoena is duplicative and cumulative, or seeks information that can be obtained from a more convenient source, or imposes an undue burden.

As explained in detail below, Renown's subpoena of NERC Investigator Brown is duplicative and cumulative and seeks information that can be obtained from a more convenient source, and imposes an undue burden on Investigator Brown and NERC. Accordingly, this Court should grant NERC's motion to quash. *See also Defenders of Wildlife v. Bernal*, 204 F.3d 920, 928 (9th Cir. 1999) (affirming district court's decision granting motion to quash subpoena of government biologist based on undue burden to U.S. Fish and Wildlife Service); *United States EEOC v. Pinal Cnty.*, 714 F. Supp. 2d 1073, 1079 (S.D. Cal. 2010)(granting EEOC motion to quash in part because the information was available from a more convenient source); *accord Exxon Shipping v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules of Civil Procedure explicitly

1  provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give

2  ample discretion to district courts to quash or modify subpoenas causing 'undue burden.'").

3  **1.    The Information Renown Seeks Is Duplicative and Cumulative**

4  Any information Renown seeks to obtain through the subpoenaed deposition of

5  NERC Investigator Brown from the facts of NERC's investigation of Plaintiff's charge

6  would be duplicative and cumulative of information in NERC's investigative file, which the

7  parties already have.

8  NRS 233.190 generally precludes providing any information on specific cases

9  investigated by NERC. However, NERC may provide the information to the parties except:

10  (1) information obtained during negotiations for a settlement or attempts at mediating or

11  conciliating the complaint, (2) investigative notes or reports, and (3) information that may

12  be used to identify a person who provided information during the investigation[3] and who

13  has requested anonymity. NRS 233.190(4). With these exceptions, the parties have all the

14  information on this matter by way of the investigative file.

15  Additionally, Investigator Brown has minimal recollection of Plaintiff's charge

16  against Renown independent of the materials in the investigative file as it's been about

17  four years since he investigated Plaintiff's charge. Again, all parties have a copy of the

18  investigative file, which should suffice in lieu Investigator Brown's fading memory. As

19  noted below, it would cause NERC an undue burden for one of its only *nine* full-time

20  investigators to spend time at a deposition, and then at some point, provide trial testimony

21  for a matter that NERC is not a party.

22  Accordingly, this court should grant NERC's motion to quash the subpoena because

23  the Investigator Brown would only provide information that is duplicative and cumulative

24  of information available in the investigative file violating Fed. R. Civ. P. 26(b)(2)(C)(i). *See*

25  *Pinal Cnty.*, 714 F. Supp. 2d 1073, 1079 (S.D. Cal. 2010) (holding that "Respondents have

26  made no showing that [the EEOC Investigator] possesses relevant, non-privileged

27  information that is not cumulative or duplicative to the information contained in the EEOC

28  _____
[3] Witnesses interviewed.

1   investigative file . . . , which, in the Court's view, is likely the best source of the information

2   presently sought by Respondents.").

3

4   **2.   *The Information Renown Seeks Can Be Obtained from Another Source that Is More Convenient and Less Expensive***

5   The information Renown seeks through the subpoena of NERC's Investigator Brown

6   can be obtained from another source that is more convenient and less expensive,

7   specifically, through a copy of the investigative file. It takes less time and money for NERC

8   to produce a copy of an investigative file (which has already been produced) than to produce

9   an investigator.

10   In *United States E.E.O.C. v. Pinal County*, Case No. 10-CV-0473-JLS (JMA), 2 (S.D.

11   Cal. 2010), the Court granted non-party EEOC's motion to quash the subpoena to depose

12   one of its staff. EEOC, pursuant to a subpoena *duces tecum*, produced a copy of its files

13   regarding Plaintiff, Millsaps' charges. The Court has in the past permitted the deposition

14   of an EEOC investigator to go forward in order to *clarify factual information contained in*

15   *its investigative file* and to answer questions about *ambiguous factual references* contained

16   therein which the defendant had specifically identified. *Id.* at 6. But the Court found that,

17   "[i]nstead, Respondents seek to obtain clarification and interpretation of the EEOC's

18   determination letter itself, a wholly different, and broader, matter than the discrete factual

19   clarifications sought by the defendants in the above three cases." *Id.*

20   Similarly, NERC has produced a copy of its files regarding Plaintiff, Sanchez's

21   charges. Regarding Renown's subpoena of Investigator Brown, as the Court in *Pinal*

22   *County* reasoned, "Respondents have made no argument that the investigative files

23   produced by the EEOC require any clarification or contain any ambiguity. Indeed,

24   Respondents have provided no information to the Court about the content of those

25   documents and why the documents do not answer the questions Respondents have

26   concerning the factual basis for the EEOC's probable cause determination." *Id.* Absent a

27

28

1   showing of any ambiguity in the investigative file, Renown merely seeks clarification or

2   interpretation of the determination letter.

3       As such, Investigator Brown's testimony is protected by the deliberative process

4   privilege. "[W]henever the unveiling of factual materials would be tantamount to the

5   `publication of the evaluation and analysis of the multitudinous facts' conducted by the

6   agency, the deliberative process applies." *Nat'l Wildlife Fed'n*, 861 F.2d at 1119 (citation

7   omitted)." *Id.* at 5. As the Court in *Penal County* concluded, the broad scope of information

8   that Renown is seeking is protected by the deliberative process privilege, and thus, the

9   Court should grant NERC's motion to quash Renown's subpoena as the information it seeks

10  has already been provided in the investigative file.

11

12      **3.   *Renown's Subpoena Places an Undue Burden on Investigator Brown and NERC***

13      Finally, because the subpoena of Investigator Brown would gather information that

14  is duplicative of information that is more conveniently and less expensively available in the

15  investigative file, the subpoena imposes an undue burden on Investigator Brown and on

16  NERC. This is especially true in light of the impact that routine, non-critical testimony of

17  NERC staff would have on the NERC's ability to carry out its congressionally mandated

18  mission of enforcing anti-discrimination laws in the workplace.

19      Per statute, NERC's mission is to foster the right of all persons reasonably to seek,

20  obtain and hold employment and housing accommodations, and reasonably seek and be

21  granted services in places of public accommodation without discrimination, distinction or

22  restriction. (Ex B, NERC's Biennial Report, January 2021) Private litigants should not be

23  permitted to impede NERC's mission by requiring NERC personnel to testify for no

24  significant purpose. *See Exxon Shipping Co. v. US. Dept. of Interior*, 34 F.3d 774, 779 (9th

25  Cir. 1994) ("We acknowledge the government's serious and legitimate concern that its

26  employee resources not be commandeered into service by private litigants to the detriment

27  of the smooth functioning of government operations."); *Tanks v. Lockheed Martin Corp.*,

28

4:03cv408, 2006 WL 1892516 at *3 (S.D. Miss. July 10,    2006) (finding that the "likely disruption to the operations of the agency" outweighed "the possibility that Respondents have already obtained all of the material to which they are entitled").

During the pandemic, NERC was forced to suspend complaint intakes for a period of time. NERC received 1,692 complaints of discrimination at the end of the 2020 fiscal year. *See Biennial Report*. As of January 2021, NERC's backlog was 348 cases pending assignment and a current wait time of *seven (7) weeks* to meet with an investigator for an initial review of a complaint. *Id*. With these numbers, **NERC has nine full-time investigators, a vacant Chief position and a vacant Supervisor position**.

Specifically, Investigator Brown reviews several complaints every year (it's been four years since this current matter), conducts full investigations on charges of discrimination, in addition to intake duties of initial review of complaints. He was also in a supervisory position for a period of time and therefore, assisted other investigators and responded to their questions. Thus, pulling the investigator off active duty—temporarily halting his efforts to enforce anti-discrimination laws in the workplace, housing, and public accommodations to produce the investigator and accompanying counsel for a deposition and subsequent trial in which NERC is not a party, adds significant cost to NERC. It further increases the backlog of complaints, which would not serve the public interest.

Prior to any litigation, a complainant must have exhausted administrative remedies with NERC before filing a lawsuit. *See* NRS 613.405. NERC cannot delegate complaints elsewhere. Thus, NERC's ability to do its work would be severely hampered if its employees were required to appear to testify in court or at deposition regarding the hundreds of charges they have investigated. *See Leyh v. Modicon*, Inc., 881 F. Supp. 420, 424 (S.D. Ind. 1995) ("Because virtually any civil action alleging employment discrimination must have gone through the EEOC . . . , the EEOC has obvious and well-founded concerns about having its investigators spend their time testifying about old investigations instead of conducting new ones.").

As NERC is the state counterpart to EEOC, other district courts considering this issue have reached similar results and determined that requiring the deposition of EEOC personnel in cases in which the EEOC is not a party would subject the EEOC to an undue burden. *See Lang v. Kohl's Food Stores, Inc.*, 185 F.R.D. 542, 550 (W.D. Wisc. 1998) (concluding that a subpoena placed a "demonstrable burden on the EEOC, [and] that the burden of compliance with defendant's subpoenas is, under the circumstances, undue"); Leyh, 881 F.Supp. 420, 424 (S.D. Ind. 1995) (granting protective order over subpoena to depose an EEOC Investigator); *see also Moore v. Armour Pharmaceutical Co.*, 129 F.R.D. 551, 552-57 (N.D. Ga. 1990) (quashing motion to depose Center for Disease Control employee and discussing cases quashing deposition subpoenas sent to employees of, inter alia, Department of Labor, Environmental Protection Agency, National Transit Safety Board, and Federal Drug Administration). For the above reasons, even this one current subpoena causes an undue burden on NERC and Investigator Brown and therefore, the subpoena should be quashed.

### 4. *The Subpoena should be Quashed Because the Adequacy of NERC's Investigation and PROBABLE CAUSE Finding Has No Impact on This Litigation*

Investigator Brown's investigation determined that PROBABLE CAUSE existed for a finding of ADA discrimination. It is well settled that an employer may not litigate the adequacy of the government agency's investigation and determination. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44-45 (1974); *EEOC v. KECO Industries, Inc.*, 748 F. 2d 1097, 1100 (6th Cir. 1984)( error for the district court to inquire into the sufficiency of the Commission's investigation); *EEOC v. General Electric Co.*, 532 F. 2d 359, 370 n.31 (4th Cir.)(EEOC's investigation not reviewable, noting the substantial "potential for delay and diversion which such an undertaking would create" and the "limited    benefit,"    court holds "the Commission's determination does not establish rights or obligations; the respondent is entitled to a trial de novo in the district court.").

It is clear that this litigation does not rely on his testimony to assist the jury/fact-finder in deciding whether Plaintiff was discriminated against in violation of Title VII. *See EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963,968 n.3 (7th Cir. 1996) ("[the] determination of reasonable cause ...has no legally binding significance in subsequent litigation"); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916,933 (7th Cir. 2001) ("courts have concluded that neither a finding by the EEOC that discrimination occurred, nor a finding of no discrimination, has legal consequences or would promote accurate decision making by juries"); *EEOC v. St. Anne's Hosp.*, 664 F.2d 128, 131 (7th Cir. 1981)(rejecting Respondents claim that the EEOC failed to investigate adequately a particular claim and noting that "[a] reasonable cause determination is not to adjudicate a claim but to notify an employer of the Commission's findings").

Renown can rebut Plaintiff's allegations at trial through the testimony of percipient witnesses and non-hearsay documentary evidence, not the testimony of non-percipient witness Investigator Brown. Moreover, NERC is not a party to the litigation and the courts made clear that parties are not able to challenge EEOC (here, NERC) PROBABLE CAUSE findings. *See also Plummer v. Western Jnt'l Hotels Co.*, Inc. 656 F.2d 2 502, 505 (9th Cir. 1981). At trial, the focus should be the underlying merits of Plaintiff's Title VII and ADAAA claims, not the adequacy of the NERC's PROBABLE CAUSE findings and investigation.

Accordingly, this court should grant the EEOC's motion to quash because the deposition of Investigator Brown would violate Fed. R. Civ. P. 26(b)(2)(C)(i) because it would produce information that is more conveniently and less expensively available in the investigative file. *See Exxon*, 34 F.3d at 779 (noting that "[t]he Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas"). For all these reasons, NERC respectfully requests this court grant NERC's motion to quash Renown's subpoena of Investigator Brown.

. . . . .

. . . . .

. . . . .

1

## III. CONCLUSION

2      For the foregoing reasons and good cause shown, NERC respectfully requests that

3  this Court quash Renown's subpoena to compel Investigator Brown to appear at trial.

4      DATED: October 17, 2022.

5                                          AARON FORD
                                           Attorney General
6
                                      By: /s/ Sophia G. Long
7                                         SOPHIA G. LONG (Bar No. 8549)
                                          Senior Deputy Attorney General
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

CERTIFICATE OF SERVICE

3

I certify that I am an employee of the Office of the Attorney General, State of Nevada,

4

and that on October 17, 2022, I filed the foregoing document via this Court's electronic filing

5

system. Parties that are registered with this Court's EFS will be served electronically.

6

7

8

      /s/ Debra Turman

/s/ Secretary Name

Secretary Name, an employee of

the office of the Nevada Attorney General

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AFFIDAVIT OF KARA M. JENKINS, ADMINISTRATOR TO
## THE NEVADA EQUAL RIGHTS COMMISSION

I, Kara M. Jenkins, Administrator of the Nevada Equal Rights Commission ("NERC"), do hereby swear under penalty of perjury that the assertions of this affidavit are true.

1.  That on September 30, 2022, NERC Investigator Richard Brown was served with a subpoena for the United States District Court case number 3:21-cv-00317-MMD-CSD, from Defendant, Renown Health.

2.  That Investigator Brown found PROBABLE CAUSE of disability discrimination in the case of Sanchez v. Renown Health, NERC Case No. 0112-18-0007R.

3.  That NERC is a Fair Employment Practices Agency ("FEPA") with the Equal Rights Commission ("EEOC") and upon case closure of NERC investigations, all cases are sent to the EEOC office.

4.  That NERC closed its investigation on this matter and sent the case to the EEOC office on or about April 20, 2021.

5.  That all parties subpoenaed and received the file for this matter from EEOC.

6.  That because the parties have the investigative file, Investigator Brown's testimony would be duplicative and cumulative.

7.  That after NERC sends the files to the EEOC office, NERC no longer participates in closed cases, and spends its limited time and resources on current cases, therefore, Investigator Brown's testimony would be an undue burden on NERC.

8.  That pursuant to EEOC guidance and legal precedence, NERC staff, including investigators, do not participate in the litigation of the parties.

1

9.    I declare under penalty of perjury that the foregoing is true and correct.


Executed this 17 day of October, 2022 in Las Vegas , Nevada .
                                              City                    State

                                    Signature: _____


State of NEVADA
County of CLARK


Subscribed and sworn to before me
this 17 day of October , 2022,
by Caleb Potter .

_____
Notary Public in and for said County and State.

CORA__F __ _SON
____                    __da
                    __
My Appt. Exp. October 25, 2022

2

Exhibit A

1  SANDRA KETNER, ESQ.
   Nevada Bar No. 8527
2  SKetner@SHJNevada.com
   SIMONS HALL JOHNSTON PC
3  690 Sierra Rose Drive
   Reno, Nevada 89511
4  Telephone: (775) 785-0088
   *Attorney for Defendant*
5

6              **UNITED STATES DISTRICT COURT**

7                   **DISTRICT OF NEVADA**

8  LUCERO SANCHEZ,                      Case No.: 3:21-cv-00317-MMD-CSD
9
              Plaintiff,
10
11 v.                                   **DEFENDANT'S NOTICE OF TAKING
                                        DEPOSITION OF NERC
12 RENOWN HEALTH, a non-profit Nevada   COMPLIANCE INVESTIGATOR II
   Corporation, and DOES 1-20, inclusive,  RICHARD BROWN**
13
              Defendant.                **Date: October 25, 2022**
14                                       **Time: 9:00 a.m.**
15

16

17    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

18         PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30, DEFENDANT

19 RENOWN HEALTH, by and through its counsel of record, will take the deposition of NERC

20 Compliance Investigator II Richard Brown on October 25, 2022, at 9:00 a.m., at SIMONS HALL

21 JOHNSTON, PC, 690 Sierra Rose Drive Reno, Nevada 89511, before a notary public or some other

22 officer authorized by law to administer oaths and will be stenographically recorded. The deposition

23 will continue from day to day, excluding non-business days, until completed.

24 DATED this 30th day of September 2022.

25                        By: _____
                              SANDRA KETNER, ESQ.
26                            SIMONS HALL JOHNSTON PC
                              690 Sierra Rose Drive
27                            Reno, Nevada 89511

28

                                1

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

**CERTIFICATE OF SERVICE**

I, Sandra Ketner, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada, by the law offices of Simons Hall Johnston PC. My business address is 690 Sierra Rose Drive, Reno, Nevada 89511, and my email address is sketner@shjnevada.com.  I am over the age of 18 years and not a party to this action.

On the date below, I served the foregoing **DEFENDANT'S NOTICE OF TAKING DEPOSITION OF NERC COMPLIANCE INVESTIGATOR II RICHARD BROWN** by causing the document to be served via electronic mail, and U.S. Mail addressed as follows:

> Richard Brown
> c/o Senior Deputy Attorney General Sophia Long
> 555 E. Washington Avenue, Suite 3900
> Las Vegas, Nevada 89101
> slong@ag.nv.gov
>
> Arthur J. Bayer, Jr., Esq.
> Nevada Bar No. 01366
> 18124 Wedge Parkway, #404
> Reno, Nevada 89511
> T: (775)315-3838
> abayer@aol.com
>
> Luke Busby, Esq.
> Nevada Bar No. 89509
> 316 California Avenue #2
> Reno, Nevada 89509
> T: (775)453-0112
> luke@lukeandrewbusbyltd.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on September 30th, 2022.

_____
Employee of Simons Hall Johnston PC

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

2

A088B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the District of Nevada

| | |
|---|---|
| LUCERO SANCHEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:21-cv-00352-MMD-CSD |
| | ) |
| RENOWN HEALTH, a non-profit Nevada Corporation, | ) |
| and DOES 1-20, inclusive, | ) |
| | ) |
| Defendant. | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

**TO:**   **NERC Compliance Investigator II Richard Brown, 1325 Corporate Blvd., Suite 115 Reno, NV 89502**
**c/o Snr. Deputy Attorney general Sophia G. Long via email (slong@ag.nv.gov)**

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.

| PLACE: | DATE AND TIME: |
|---|---|
| SIMONS HALL JOHNSTON, PC | |
| 690 Sierra Rose Drive Reno, Nevada 89511 | October 25, 2022 at 9:00 a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE: | DATE AND TIME: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena, and Rule 45 (e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   September 30, 2022

CLERK OF COURT

                                    OR

_____          _____
Signature of Clerk or Deputy Clerk                 Attorney's signature

The name, address, email address and telephone number of the attorney representing *RENOWN HEALTH, a non-profit Nevada Corporation and DOES 1-20, Inclusive.,* who issues or requests this subpoena, are:

SANDRA KETNER, ESQ., SIMONS HALL JOHNSTON PC, 690 Sierra Rose Drive, Reno, NV 89511
(775) 785-0088  sketner@shjnevada.com

### Notice to the person who isses or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is server on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4)

A088B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

**Civil Action No:  3:21-cv-00352-MMD-CSD**

### PROOF OF SERVICE
*(THIS SECTION SHOULD NOT BE FILED WITH THE COURT UNLESS REQUIRED BY FED .R. CIV. P. 45.)*

I received this subpoena for _____ on _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on _____, 2020; or

☐ I returned the subpoena unexecuted because: _____

_____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also

tendered to the witness fees for one day's attendance and mileage allowed by law.

My fees are $_____ for travel and $_____ for services, for a total of $_____

I declare under penalty of perjury that this information is true.

Date:  _____        _____
                                                                                *Server's Signature*


                                                        _____
                                                                                *Printed name and title*


                                                        _____
                                                                                *Server's address*

A088B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

Exhibit B

**STEVE SISOLAK**
GOVERNOR



Nevada Department of Employment,
Training and Rehabilitation

**ELISA CAFFERATA**
DIRECTOR

**JENNY CASSELMAN**
DEPUTY DIRECTOR

**CHRISTOPHER SEWELL**
CHIEF OPERATING OFFICER

## OFFICE OF THE DIRECTOR

January 14, 2021

Governor Steve Sisolak
101 North Carson Street
Carson City, NV 89701

Dear Governor Sisolak,

Please see the attached biennial report concerning the activities for the Nevada Equal Rights
Commission, per NRS 233.080, from the Department of Employment, Training and
Rehabilitation; Nevada Equal Rights Commission.

Respectfully,

Elisa Cafferata, Director

cc:     Jenny Casselman, Deputy Director, DETR
        Christopher Sewell, Chief Operating Officer, DETR
        Kara Jenkins, Administrator, Nevada Equal Rights Commission

# Nevada Equal Rights Commission
*Kara M. Jenkins, Administrator*



| **STATUTORY AUTHORITY:** | NRS 233, 613.405, 118.110, and 651.110 |
|---|---|
| **TELEPHONE:** | (702) 486-7161 Las Vegas (775) 823-6690 Reno |
| **WEB SITE ADDRESS:** | www.detr.nv.gov |

*PURPOSE:*

Per statute, the mission of the Nevada Equal Rights Commission (the "Commission") is to protect the welfare, prosperity, health and peace of all the people of the State, and to foster the right of all persons reasonably to seek, obtain and hold employment and housing accommodations, and reasonably seek and be granted services in places of public accommodation without discrimination, distinction or restriction.

Protections include, but are not limited to, state and federal protections based on: race, color, religion, sex, sexual orientation, gender identity and/or expression, national origin, ancestry, disability, age, genetic information, criminal background and pregnancy.

*JURISDICTION:*

The Commission conducts outreach, advises, investigates and settles discrimination in three (3) main areas:

- Employment
- Housing, and
- Places of Public Accommodation

NERC may conduct hearings related thereto.

**Employment Discrimination**
The Commission has jurisdiction to handle employment discrimination complaints relating to race, color, religion, sex, sexual orientation, age, disability, national origin/ancestry, genetic information and gender identity or expression, pregnancy and criminal background.

The Commission works in partnership with the federal Equal Employment Opportunity Commission (EEOC) regarding these cases of employment discrimination except for criminal background violations (state-only).

**Housing and Places of Public Accommodation Discrimination**
The Commission has jurisdiction to handle housing discrimination complaints relating to race, religion, color, national origin/ancestry, familial status, age, disability, sex, sexual orientation, and gender identity or expression.

As it relates to **housing**, NERC has been in discussions with the United States Department of Housing and Urban Development (HUD) to become substantially equivalent in law to certify as a Fair Housing Assistance Program or "FHAP" partner. This designation will allow NERC to take on HUD's backlog of Nevada Housing Discrimination cases and receive much needed funding to support program operations through federal dollars. The designation will provide substantial funding not realized with state general funds. The federal dollars realized will equip NERC with experienced investigators and lawyers to assist [lay] Nevadans promptly and if need be, in court, to protect housing rights often challenged to communities of color, with disabilities and/or sexual orientation and/or gender identity protections. NERC's attempt for the HUD equivalency BDR in 2017 did not succeed; however, NERC is hopeful the 2021 Legislature will create the BDR for NERC to give guidance for Governor approval. Per statute, the Governor will declare equivalency once NERC certifies with HUD. NERC will ensure a recommendation and assurances that resources are available to allow said declaration (NRS 233.160).

Additionally, the Commission has jurisdiction to handle **public accommodation** complaints relating to race, color, religion, national origin/ancestry, age, disability, sexual orientation, sex, and gender identity or expression.

*ORGANIZATIONAL STRUCTURE:*

**Board**

As per NRS 233.030, the Nevada Equal Rights Commission consists of 5 commission members, appointed by the Governor.  The commissioners are representative of religious, disabled, racial, and ethnic groups of both sexes in the State.  As per NRS 233.090, the Commission is managed by an Administrator, also appointed by the Governor.

**Agency and Administrator**

The  Commission is a designated staff of 17 FTE.  **Currently, there are 14 FTE**; (1) Compliance Investigator vacancy; (1) Chief Compliance Investigator vacancy [freeze]; (1) Management Analyst vacancy [freeze]; (1) Administrative Assistant/Reno vacancy[freeze]; and Management Software system valued at $500,000 - RFP [frozen].

Administrator is appointed by the Governor and recently was named to serve on the Governor's Sexual Harassment Task Force led by Attorney General Aaron Ford.

**NERC is without a centralized case management system.  Cases are tracked manually with MS Excel or MS Outlook.  A Case management system was approved legislatively, but funds have been frozen due to Covid.  A case management system will ensure more efficient processing of allegation complaints.  NERC receives approximately 1,500 complaints per fiscal year with less than 20 FTE.**

NERC's challenges will always be to remain fully staffed at any given time within a state fiscal year, as well as receive support in funding for the very necessary work of enforcement, training and outreach.  NERC does not charge for its training or take any monies for the settlements it procures for Nevadans.

[Go to next page]
 //
 //
 //

*AGENCY KEY GOALS/ACCOMPLISHMENTS:*

*GOAL:*
NERC will remain diligent during Covid-19, and despite freezes will make its web-site more user-friendly to decrease calls; as well as decrease the Commission's backlog of cases and improve the Commission's overall case age and wait times. In order to reduce the backlog of cases, NERC will seek to recruit once the recession is over. NERC will strive to secure Fair Housing Assistance Program (FHAP) designation under HUD in order to realize federal dollars for its housing complaints. With additional federal funding, NERC will seek to obtain and retain qualified investigators and lawyers; secure pay raises for Investigators per 2008 LCB Audit as well as re-submit its proposal for a Case Management System for more efficient case management, tracking and retrieval. It is an essential goal for NERC to expand beyond 17 FTE state-wide and secure diverse funding streams to maintain quality services to Nevadans beyond general fund dollars to ensure we assist Nevadans facing discrimination; as well as train and educate to prevent discrimination within the state.

*ACCOMPLISHMENT(S):*

**Challenge(s):**
NERC takes 7 weeks (49 calendar days) to conduct an initial interview with a charging party – this is commonly known as the intake interview. Scheduling is based on customer driven backlog and the first available investigator. NERC investigators have a 1-2 year "life" span before [seemingly] inevitable promotion or resignation. Losing an investigator has a trickle-down effect of delaying the investigative process. When NERC loses an investigator, cases are left stale until another investigator is able take that case. NERC must recruit, train and re-assign cases. Witnesses grow stale during this delay. It can take anywhere from two-three months to fill a vacant position.

**Success/Accomplishment:**
NERC has always put forth major effort(s) to honor our yearly contractual obligations with the Equal Employment Opportunity Commission (EEOC). The funding provided by our agreement to investigate and close cases on behalf of the EEOC as a partner, accounts for a little more than 1/3 of NERCs operating budget of approximately **2 million**. 2/3 of NERC's funding comes from general fund dollars. NERC relies heavily on funding from the EEOC in order to sustain operations. In both SFYs 19 and 20, case closure obligations were successfully achieved.

Certainly, during March of 2020 (FFY 20) NERC quickly resorted to remote work with the assistance of DETR and dedicated staff in order to close and settle 669 cases during this unprecedented pandemic (Covid-19). NERC also relied on the support of its law ex/ interns from UNLV Boyd School of Law.

Governor, this is a huge accomplishment.  To-date, no staff was put at-risk or contracted Covid-19, operations continued to service Nevadans, and NERC still succeeded in securing federal dollars to help Nevadans.

One of the unique qualities that accounts for a lot of NERC's success is the good will and extraordinary efforts of staff committed to NERC's mission, as well as support from the Office of the Attorney General.

Staff remains committed to assisting all with their discrimination complaints.  Moreover, our relationship with the  Equal Employment and Opportunity Commission (EEOC) is solid.  NERC's outreach program has also proven successful in terms of visibility to employers and Nevadans as a resource tool to prevent work-place discrimination. NERC offers training at no-cost to employers.


**Backlog**
Current back log is 348 cases pending assignment (as of January 2021).

**Current Wait time**
The current wait time to meet with an investigator is 7 weeks for an initial review of a complaint of discrimination.  Intakes are the first step to formalizing a charge (or dismiss) to begin the settlement/investigation process.

Despite backlog, overall case age and wait times, NERC successfully met and closed **669** cases of employment discrimination pursuant to its work share agreement with the EEOC at the conclusion of SFY 20.

**SFY 20, NERC received a total of 1, 692 allegations of discrimination.  We anticipate an increase in filings moving forward.**

**Incentives to retain investigators at a  more competitive salary, with more mediators on staff would assist greatly in its backlog.**

**In the last two years, NERC received an average of 1,500 cases.  Our case load is purely customer-driven.  <u>More investigators would alleviate this problem</u>.**

*GOAL:*

Pursue additional opportunities to present training/outreach to employers and community Groups.

*ACCOMPLISHMENT:*

**In SFY 2019**, NERC provided outreach to approximately 1,500 Nevadans; in SFY 20 we trained approximately 600 employers/employees including a sexual harassment prevention training in partnership with the EEOC. ***Nevada Independent* Link:**
https://thenevadaindependent.com/article/the-indy-explains-how-the-state-is-training-employers-to-avoid-sexual-harassment-in-the-metoo-era

**Enforcement for SFY 20** NERC found cause and moved forward with a public hearing against Red Rock Country Club (Las Vegas).  This hearing resulted in settlement.
**Associated Press Link:** https://apnews.com/article/d2278accb89e4943a767ddeb99d7e785

[Go to next page]
 //
 //
 //

NERC Biennial Report                    January 2021                                6

*GOAL:*
Continue to develop and improve the mediation program to facilitate early resolution of discrimination complaints.

*ACCOMPLISHMENT: Settlement Dollars back to Nevadans*
The Commission continues show impressive benchmarks with its settlement rate and with regard to facilitating all forms of negotiated resolutions. This may be due largely in part to parties wanting a permanent resolution of the matter without significant time delays, including court costs and attorneys-fees related to federal/and or state court filings.

It should also be noted that NERC has dedicated staff trained in mediation to assist parties in resolving their grievances. NERC has additionally contracted services with Dee Newell Mediation and Arbitration Solutions to assist in successful mediations.

In SFY19, NERC successfully negotiated settlements (i.e., mediations and conciliations) in the approximate amount of **$2,260,358** for Nevadans alleging discrimination in employment, housing and places of public accommodations.

In SFY 20, NERC successfully negotiated settlements (i.e., mediations and conciliations) in the approximate amount of **$2,771,212** for Nevadans alleging discrimination in employment, housing and places of public accommodations.

In SFY 21 (to-date), NERC successfully negotiated settlements in the amount of **$667,000** for Nevadans. NERC may very well settle up-to **$3 million** by the end of the SFY 21.

NERC takes no fees for settlements. Settlements given back to Nevadans exceed NERCs own operating budget; a significant return benefitting the state.

*GOAL:*
EEOC Grant

*ACCOMPLISHMENTS:*
As previously reported, the Commission's federal partner, the Equal Employment Opportunity Commission (EEOC) has not rejected a single case submitted to it for closure credit and payment in this biennium.

[Go to next page]
 //
 //
 //

***ADDITIONAL KEY LONG-TERM OBJECTIVES:***

1. Secure HUD grant for your declaration of equivalence.

2. Adopt a comprehensive case management system for online complaint filing.

3. Decrease the amount of time it takes to formalize a Charge and decrease overall case age by securing more FTE.

4. Maintain our relationship with the EEOC.

5. Promote Equal Opportunity with more training and outreach support for employers and entities operating in Nevada.


***SIGNIFICANT LEGISLATION OR EXECUTIVE ACTION AFFECTING THE AGENCY:***

NERC is aware of legislative interest to update our housing laws to be equivalent with HUD.  NERC will be tracking and advising on any efforts for substantial equivalence for Governor declaration.