# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LUCERO SANCHEZ,<br><br>Plaintiff<br><br>v.<br><br>RENOWN HEALTH,<br><br>Defendant | Case No.: 3:21-cv-00352-MMD-CSD<br><br>**Order**<br><br>Re: ECF No. 41 |

Before the court is non-party Nevada Equal Rights Commission's (NERC) emergency[1] motion to quash subpoena of the NERC investigator involved in Plaintiff's case. (ECF No. 41.) Defendant Renown Health (Renown) filed a response. (ECF No. 43.) Plaintiff filed a notice indicating it did not oppose the deposition of the NERC investigator. (ECF No. 45.) NERC filed a reply. (ECF No. 48.)

For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

On January 8, 2018, Plaintiff filed a workplace discrimination complaint with the Equal Employment Opportunity Commission (EEOC). (ECF No. 5-1.) NERC investigated the charge under its workshare agreement with the EEOC. (ECF No. 5-2.) On April 20, 2021, Investigator Brown issued a probable cause finding for disability discrimination. Specifically, Investigator Brown concluded there was a failure to accommodate because Renown was made aware of

---

[1] Renown's counsel indicates that when the subpoena was served, it was communicated to Deputy Attorney General Long that October 25, 2022, was selected as a tentative date, and that the parties hoped to discuss limitations on the deposition to try and avoid court intervention. As such, there does not appear to have been a need to bring this motion on an emergency basis.

Plaintiff's need for "light duty" weight restriction accommodations of no more than 10 pounds, but Plaintiff was still required to work outside these restrictions for over one year with assignments to lift anywhere from 40-50 pounds. (ECF No. 5-4.) EEOC subsequently issued a right to sue letter. (ECF No. 5-5.) Plaintiff then filed this lawsuit under the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964, and Nevada law. Plaintiff alleges that Renown discriminated against her based upon her race and her work-related disability.

On September 30, 2022, Renown's counsel issued a subpoena and notice of deposition of NERC Investigator Brown for October 25, 2022. (ECF No. 41 at 15-19.) NERC acknowledges that Investigator Brown received the subpoena that same day. (ECF No. 41 at 1:18-19.)

On October 17, 2022, NERC filed this emergency motion to quash the subpoena, arguing that any testimony would only produce information that is cumulative and duplicative of the probable cause determination, will not lead to the discovery of admissible evidence, is protected by the government deliberative process privilege, and would create an undue burden on NERC. (ECF No. 41.)

In response, Renown argues that while the probable cause determination found Plaintiff had 10-pound lifting restrictions that were violated for over a year, NERC's investigative file does not contain records or evidence of lifting restrictions prior to November 2017. Renown acknowledges that Plaintiff's medical records demonstrate Plaintiff did have temporary 10-pound lifting restrictions from July 27, 2016 to August 11, 2016, and April 6, 2017 until July 5, 2017, and temporary 20-pound lifting restrictions from October 4, 2017 until November 19, 2017, when a permanent 20-pound lifting restriction was issued. Renown seeks to question Investigator Brown about the factual information regarding Plaintiff's lifting restrictions.

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

"On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

In addition, the court must enforce the duty of a party or attorney issuing a subpoena to avoid undue burden on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). The court where compliance with the subpoena is required to quash or modify a subpoena that: "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "The moving party [ ] has the burden of persuasion on a motion to quash a subpoena brought pursuant to [Rule 45]." *Giezie v. Valley Health System, LLC*, No. 2:12-cv-00036-ECR-GWF, 2012 WL 3929446 at *4 (D. Nev. Sept. 7, 2012) (citations omitted). "The non-party status of the movant is a factor to be considered in determining whether the burden imposed by a subpoena is undue." *Id*. (citations omitted).

## III. DISCUSSION

"[W]hile prior administrative determinations are not binding, they are admissible evidence." *Plummer v. Western Intern. Hotels Co., Inc.*, 656 F.2d 502, 504 (9th Cir. 1981) (citing *Bradshaw v. Zoological Society of San Diego*, 569 F.3d 1066, 1069 (9th Cir. 1978); *Chandler v. Roudebush*, 425 U.S. 840, 863 (1976); *Clark v. Chasen*, 619 F.2d 1330, 1337 (9th Cir. 1980)). "An EEOC determination, prepared by professional investigators on behalf of an impartial agency, has been held to be a highly probative evaluation of an individual's discrimination complaint." *Id*. at 505 (citations omitted). In *Plummer*, the Ninth Circuit held that the "plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before a judge or jury." *Id*. The same rationale applies to a probable cause finding by NERC. *Henye v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) (citing *Plummer*, 656 F.2d at 504).

"A finding of probable cause does not suggest to the jury that the EEOC has already determined that there has been a violation. Rather, it suggests that preliminarily there is reason to believe that a violation has taken place." *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir. 1986). "[T]he potential prejudicial impact of such a suggestion does not outweigh the highly probative nature of the probable cause determination." *Id*. (citing *Plummer*, 656 F.2d at 504-05). "The defendant, of course, is free to present evidence refuting the findings of the EEOC and may point out deficiencies in the EEOC determination on remand. Such evidence would go to the weight to be given by the trier of fact to the EEOC determination." *Plummer*, 656 F.2d at 505, n. 9 (citation omitted).

The Ninth Circuit has not specifically addressed whether an employer may depose an EEOC (or its state counterpart) investigator, and if so, what the parameters are of such a

deposition. District courts addressing the issue have both allowed and precluded such depositions, depending on the circumstances of the particular case.

In *U.S. E.E.O.C. v. Pinal County*, 714 F.Supp.2d 1073 (S.D. Cal. 2010), the EEOC, through then Acting Director of EEOC's San Diego office, Raul Green, issued a reasonable cause determination that the employer discriminated against the charging party on the basis of retaliation for alleging discrimination in violation of Title VII. *Pinal*, 714 F.Supp.2d at 1075. Thereafter, the EEOC issued a right to sue letter, and the charging party initiated a lawsuit in the District of Arizona, to which EEOC was not a party. EEOC produced a copy of its investigative file pursuant to a subpoena. *Id*. The employer issued a subpoena to depose Mr. Green in San Diego. EEOC moved to quash the subpoena. The employer argued that the factual basis for the probable cause determination was not set forth in the letter, and Green's deposition was necessary to clarify and interpret the determination letter and understand the basis of the determination. *Id*. at 1076.

*Pinal* acknowledged that a defendant may present evidence to refute the EEOC's findings and point out deficiencies in the EEOC determination, but relying on the Sixth Circuit's decision in *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984), concluded that the defendant may not "litigate the nature and extent of an EEOC investigation. *Pinal*, 714 F.Supp.2d at 1077 (citing *Keco,* 748 F.2d at 1100; *EEOC v. NCL America, Inc.*, 536 F.Supp.2d 1216, 1221-22 (D. Haw. 2008)). The court explained that allowing the employer to do so "would deflect the efforts of both the court and the parties from the main purpose of [Title VII] litigation: to determine whether [the defendant] has actually violated Title VII." *Id*. (citation and quotation marks omitted, alteration original).

In addition, *Pinal* concluded that the information sought by the employer was protected from disclosure by the deliberative process privilege, the purpose of which is to "'encourage frank and open discussions of ideas' in order to improve the governmental decision-making process." *Id*. at 1077 (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)). In determining whether the privilege applies, the court looks at "whether 'disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id*. (quoting *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). "Predecisional materials are privileged 'to the extent that they reveal the mental processes of decision-makers.'" *Id*. In addition, "'whenever the unveiling of factual materials would be tantamount to the publication of the evaluation and analysis of the multitudinous facts conducted by the agency, the deliberative process applies.'" *Id*. (quoting *Nat'l Wildlife Fed'n*, 861 F.2d at 1119)).

The court acknowledged that it may be appropriate in some cases to allow the deposition of an EEOC investigator, such as where there is a need to clarify factual information in the investigative file by asking questions about ambiguous references or illegible notes. *Id.* (citing *Little v. Auburn University,* No. 3:08cv373-WKW-CSC, 2010 WL 582083 (M.D. Ala. Feb. 17, 2010); *EEOC v. Cal. Psych. Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009)). *Pinal* was careful to point however, that "only 'factual aspects of the material could be clarified'" and "and 'conclusions, interpretations, or recommendations that the investigator formulates would be subject to' the deliberative process privilege." *Id.* at 1077-78 (quoting *California Psychiatric*, 258 F.R.D. at 397, and citing *EEOC v. LifeCare Mgmt. Servs.*, No. 2:08-cv-1358, 2009 WL 772834, at *2 (W.D. Pa. 2009) (allowing deposition to proceed where the employer sought "only

to obtain facts secured by the EEOC during its investigation" and was "not seeking information concerning the EEOC's opinions, analysis, or legal theories regarding the charge")).

In *Pinal*, the court granted the motion to quash, finding the defendant made no argument that the EEOC's investigative file required clarification or contained any ambiguity. *Pinal* found proceeding with the deposition was improper where the employer instead sought "clarification and interpretation of *the EEOC's determination letter itself*," which would "undoubtedly require revealing information about the EEOC's deliberative process, such as its analysis of the information obtained, its witness credibility evaluations, its evaluation of the evidence, the personal opinions of EEOC representatives, and the decision-making process of the EEOC" which is protected from disclosure by the deliberative process privilege. *Id*. (citation omitted).

In *Giezie v. Valley Health System, LLC*, Magistrate Judge Foley denied EEOC's motion to quash a deposition subpoena for EEOC's investigator. *Giezie,* 2012 WL 3929446. There, the plaintiff indicated an intent to introduce EEOC's probable cause determination at trial. *Id*. at *1. In *Giezie*, there were ambiguities and inconsistencies between the plaintiff's testimony and the investigative file for which the defendant sought clarification.

*Giezie* acknowledged that the EEOC's reasonable cause determination was admissible evidence of discrimination or retaliation, though not binding on the trier of fact. *Id.* (citing *Plummer*, 656 F.2d at 505; *Heyne*, 69 F.3d at 1482-83). The court likewise acknowledged that the defendant could also present evidence to refute those findings or point out deficiencies in the determination. *Id*. (citing *Plummer*, 656 F.2d at 505, n. 9).

*Giezie* discussed the District of Arizona's decision in *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545 (D. Ariz. 2011), which was much more expansive regarding the permissible scope of a deposition of an agency's investigator. There, both the Arizona Civil

Rights Division (ARCD) and the charging person reserved the right to introduce the ARCD's reasonable cause determination, the latter with the intent to use it to prove discrimination. *Goddard*, unlike the other cases to address the issue, concluded that "[i]ntroducing the reasonable cause determination itself puts its validity at issue, and not merely the validity of the facts on which it is based." *Goddard*, 273 F.R.D. at 552. Under *Goddard,* "the accuracy, adequacy and reasonableness of the investigation on which the determination is based, as well as the reasonableness of the evaluation of the investigation and the resulting conclusions leading to the determination are all relevant topics of inquiry." *Id*.

*Giezie* declined to resolve the apparent conflict between *Goddard* and *Pinal* and allowed the deposition to proceed because the defendant represented it intended to question the investigator about "the factual underpinnings of his investigation," and conceded that EEOC could "properly assert objections to specific questions during the deposition on the basis of the deliberative process privilege if a question reasonably appears to seek privileged information." *Giezie*, 2012 WL 3929446 at *8.

In this case, Plaintiff intends to admit NERC's probable cause determination at trial, and intends to call Investigator Brown or NERC administrator Kara Jenkins at trial to authenticate the determination "and to testify as to Renown's cavalier approach to addressing [Plaintiff's] clear need for accommodations." (ECF No. 45 at 2:23-27.)

The probable cause determination found that Plaintiff was required to work outside the 10-pound lifting restrictions for over a year between the summer of 2016 and 2017. Renown represents that the NERC investigative file contains no evidence about Plaintiff's lifting restrictions. Renown has provided the court with Plaintiff's relevant medical records which reflect that Plaintiff had temporary restrictions to lift no more than 10 pounds from July 26 until

August 11, 2016, but then she had no lifting restrictions from August 11, 2016, until April 6, 2017. Then, Plaintiff once again had temporary lifting restrictions up to 10 pounds from April 6, 2017, until July 5, 2017.  She had no restrictions from July 5, 2017 until October 4, 2017, when she was given a temporary lifting restriction of up to 20 pounds. On November 9, 2017, she was given a permanent lifting restriction of up to 20 pounds. (ECF No. 43-7.) As such, it is reasonable for Renown to seek to clarify the facts that form the basis of the probable cause determination concerning Plaintiff's lifting restrictions.

The court will allow a limited deposition of Investigator Brown to proceed. The deposition will be limited to three hours, which will include any questioning by the Plaintiff in addition to Renown's questioning. The scope of the deposition is limited to clarifying the facts regarding Plaintiff's lifting restrictions, which Renown has agreed to. (ECF No. 43 at 2:16-18.) This court is not prepared to expand the deposition inquiry so far as *Goddard* and invade any applicable deliberative process privilege. Therefore, NERC is free to assert any applicable objections during the deposition, including the deliberative process privilege if the questions invade the sphere of Brown's conclusions, interpretations or recommendations. The parties shall meet and confer with Brown's counsel to select a mutually agreeable date and time for the limited deposition.

The court will not allow Renown to inquire into Brown's finding of a "strained relationship" with Renown. Renown has not identified any ambiguity with respect to this finding which needs clarification. Instead, Renown simply wants Brown to confirm that this is not the equivalent of unlawful harassment or discrimination because the language "could easily cause a jury to imply prejudice against Defendant, [and] improperly find a violation of Title VII of the Civil Rights Act." (ECF No. 43 at 4:9-11.) At the same time, Renown explicitly recognizes that

NERC concluded there was *no* probable cause to believe Plaintiff was discriminated against based on her national origin. The language of the determination letter itself should be sufficient to point out to a jury that there was no such finding. The court agrees with NERC that any inquiry into the "strained relationship" finding would be protected by the deliberative process privilege as it would seek to ascertain the investigator's impressions, thoughts, opinions, and analysis regarding his interview of confidential witnesses.

The court rejects NERC's argument that any information it may provide is duplicative of information in its investigative file, because Renown claims there is no evidence of the lifting restrictions in the investigative file. There is also a discrepancy between Brown's statement that Plaintiff had light duty weight restrictions of no more than ten pounds that were violated for over one year and Plaintiff's medical evidence.

Insofar as NERC argues that investigator Brown has minimal recollection of Plaintiff's charge, EEOC made a similar argument in *Giezie*. Like Magistrate Judge Foley in *Giezie*, the court does not find this argument availing. As Magistrate Judge Foley pointed out, Brown's "recollection about particular relevant matters may be refreshed by questions posted to him during the deposition." *Giezie*, 2012 WL 3929446, at *9. In addition, he may reference the investigative file to refresh his recollection of these matters.

Nor does the court find that the deposition should be precluded under Nevada Revised Statute (NRS) 233.190, because Renown is not seeking to elicit any information protected under NRS 233.190(4).

Finally, the court appreciates NERC's heavy caseload. However, that alone does not relieve Brown of the obligation to appear for a deposition under Rule 45, and the court has accommodated this concern by limiting the deposition to three hours.

## IV. CONCLUSION

NERC's motion (ECF No. 41) is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** insofar as Renown is permitted to take the deposition of Investigator Brown to clarify the facts regarding Plaintiff's lifting restrictions. The deposition is limited to three hours, which includes questioning by Renown as well as any questioning by Plaintiff's counsel. NERC is free to assert any applicable objections during the deposition, including the deliberative process privilege if the questions invade the sphere of Brown's conclusions, interpretations, or recommendations. The parties shall meet and confer with Brown's counsel to select a mutually agreeable date and time for the deposition.

The motion is **GRANTED** insofar as Renown is not permitted to inquire into the "strained relationship" Investigator Brown noted between Plaintiff and Renown in the probable cause determination letter.

**IT IS SO ORDERED**.

Dated: November 4, 2022

_____
Craig S. Denney
United States Magistrate Judge