SANDRA KETNER, ESQ.
Nevada Bar No. 8527
SKetner@SHJNevada.com
SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, Nevada 89511
Telephone: (775) 785-0088
Fax: (775) 785-0087

*Attorneys for Defendant Renown Health*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LUCERO SANCHEZ,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>RENOWN HEALTH, a non-profit Nevada Corporation, and DOES 1-20, inclusive,<br><br>　　　　　Defendant. | Case No.: 3:21-cv-00352-MMD-CSD<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD MOTION REGARDING DISCOVERY DISPUTE** |

Defendant Renown Health ("Renown"), by and through its respective counsel, hereby responds to Plaintiff's Third Motion Regarding Discovery Dispute, in accordance with the Civil Standing Order of Magistrate Judge Craig S. Denney.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.　　A Statement of the Unresolved Issues:**

In Plaintiff's First Requests for Production, Plaintiff sought electronically stored information ("ESI") from nearly every member of Defendant's Human Resources Department and supervisor of the Food and Nutrition Services ("FNS") Department for a period exceeding seven (7) years mentioning either Plaintiff's first or last name. Defendant objected to the requests as being overly broad, unduly burdensome and not proportional to the needs of the case. Defendant proposed a

phased approach to the issue by pulling the emails of the main witnesses in the case most likely to communicate with each other about Plaintiff's employment/work restrictions and requested key words to perform a more narrowly tailored search.  **(ECF No. 28).**  Despite their adamant rejection during the meet and confer process, Plaintiff's counsel subsequently agreed to Defendant's proposal at the discovery hearing conducted on February 10, 2022.  Specifically, Defendant agreed to use key words provided by Plaintiff to search and produce relevant emails from: (1) Christina Vargas for the time period 1/1/15-5/25/17; (2) Justin Bart for the time period 1/1/16-12/31/16; and (3) Jessi Russell (aka Cohen) for the time period 1/1/17-12/31/17.  **(ECF No. 30).**

After incurring a cost of nearly $60,000 to retrieve the ESI from Iron Mountain, Defendant produced 23 emails to/from Ms. Vargas (8 of which were relevant), 53 emails to/from Mr. Bart (26 of which were relevant), and 80 emails to/from Ms. Cohen (79 of which were relevant).  Defendant believed that its agreement to incur the substantial cost to obtain and produce the emails of the three primary witnesses in this case was a compromise of the ESI issues regarding Ms. Vargas, Mr. Bart and Ms. Cohen.  Defendant did not expect Plaintiff to essentially rescind the compromise and propound the exact same request for Ms. Cohen's emails (Request No. 24) or broaden the request for Ms. Vargas' emails by time period and subject matter (Request Nos. 26-27).

Regardless, the emails produced by Defendant constitute a significant portion of any relevant ESI that exists regarding Plaintiff and importantly, Plaintiff acknowledged in her discovery motion that Defendant's ESI production contained relevant evidence useful to her claims.  However, Plaintiff fails to mention that much of the email correspondence already produced by Defendant is between the three main witnesses and Shawn Lavac (the subject of Request No. 23).  Plaintiff also fails to mention that Defendant produced its entire MIDAS file (606 pages) and entire iVOS file regarding Plaintiff's workers compensation claim (668 pages) in response to Request Nos. 21-22. The MIDAS file contains over 40 of Ms. Lavac's emails and the iVOS file contains a few more of her emails.  Moreover, the MIDAS file contains a chronology of significant events as well as a history of communications with Plaintiff's supervisors regarding Plaintiff's physical restrictions. Therefore, Defendant maintains that it should not have to incur additional expenses to facilitate Plaintiff's fishing expedition when it has produced all directly relevant evidence in its possession

and Plaintiff has not identified what else she believes exists to support her claims.

**2.    A Summary of the Moving Party's Position:**

Federal Rule of Civil Procedure 26(b)(2)(B) provides that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." When considering this issue, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause." *Id.* Finally, if the ESI is not reasonably accessible, the court may consider whether cost sharing is appropriate. *Nogle v. Beach St. Corp.*, 2012 WL 3687570, at *8 (D. Nev. Aug. 27, 2012).

In her discovery motion, Plaintiff states that the emails of Ms. Lavac are of particular interest in relation to Plaintiff's alleged demotion. Notably, Ms. Lavac testified in her deposition that she recorded when she learned of Plaintiff's position and compensation change in the MIDAS system. Ms. Lavac further testified that all notes and records of Plaintiff's workers' compensation claim are contained in MIDAS. When asked, "How about communications about my client's claim? Are those maintained in MIDAS?", Ms. Lavac testified "Some. Majority of the cases in the insurance side of the system," which is called iVOS. Finally, Ms. Lavac testified that PDF emails are uploaded to both MIDAS and iVOS.[1] As noted above, Defendant produced both the MIDAS and iVOS files in their entirety with the exception of some privileged communications. Therefore, Plaintiff already has the evidence which she claims is the basis for Request No. 23. Moreover, Ms. Lavac is Defendant's Workers Compensation Manager and would not have any involvement in Plaintiff's race discrimination claim or any involvement with Plaintiff following the closure of her workers compensation claim. Accordingly, Plaintiff's Request No. 23 seeking Ms. Lavac's emails from 7/26/16 to present is overly broad, unduly burdensome and not proportional to the needs of the case - particularly in light of the evidence already produced in this matter.

---

[1] Defendant references and can produce pages 46-50 of Ms. Lavac's deposition transcript at the Court's request.

Request Nos. 24 and 26 seek emails from Ms. Cohen and Ms. Vargas which were the subject of the parties' ESI compromise reached in February. Plaintiff does not identify what, if anything, she hopes to obtain from these renewed searches. Nor does Plaintiff explain why the parties' agreed upon ESI compromise is not sufficient considering that Defendant has already produced email correspondence between Ms. Cohen and Ms. Vargas related to Plaintiff's change in job title and compensation which occurred in late 2016/early 2017.

Likewise, Plaintiff has not explained how Request No. 27 seeking Ms. Vargas' emails about Kathy West, a Caucasian woman who held the position of FNS Manager until her resignation in lieu of termination for falsification of company records on February 10, 2015, is relevant or proportional to this case. Ms. West is clearly not a comparator in this case. Ms. West's termination notice was approved by her supervisor Melodie Osborn and HR Business Partner Trisha Daly, not Ms. Vargas or Mr. Cohen. While Ms. West testified in her deposition that she reported an inappropriate racial remark allegedly made by Ms. Vargas to Defendant's human resources, Defendant produced all investigation records regarding this alleged incident as well as any other complaints it received regarding Ms. Vargas. Plaintiff chose not to depose Ms. Vargas, who Plaintiff alleges was the primary discriminatory actor.

Finally, Plaintiff has not explained how Request No. 25 seeking emails from Eric Olsen, formerly Renown Regional Medical Center's CEO and Ms. Vargas' direct supervisor, even exist let alone how they are proportional or relevant to the case. Plaintiff represented during the parties' meet and confer that he seeks Mr. Olson's emails concerning Ms. Vargas, not Plaintiff. But Request No. 27 asks for Mr. Olson's emails about Plaintiff, not Ms. Vargas. Further, Ms. Cohen testified in her deposition regarding her discussions with Mr. Olson about Ms. Vargas, "We would have discussed this level in person."[2] Therefore, Request No. 27 has no evidentiary basis or support.

Discovery in this case has closed and Defendant is likely to obtain summary judgment on Plaintiff's claims. While Plaintiff contends in her discovery motion that the alleged discrimination

---

[2] Defendant references and can produce pages 19-22 and 47-48 of Ms. Cohen's deposition transcript at the Court's request.

began in October 2014, she testified in her deposition that it began after her former supervisor, German Pineda, was terminated.[3] Plaintiff initially testified in her deposition that she never heard Ms. Vargas or Mr. Bart make any comments about Mexicans, Hispanics, or her national origin. However, Plaintiff later changed her deposition testimony claiming that she heard Ms. Vargas, who is Hispanic/Latina, supposedly say on a single occasion that she doesn't like Mexicans. Even though Plaintiff kept a diary of alleged incidents of discrimination and harassment that she experienced throughout 2015-2017, she somehow failed to record this alleged comment by Ms. Vargas. Nevertheless, Plaintiff admitted in her deposition that the alleged "hostile environment" that she experienced was due to her close affiliation with Mr. Pineda and Ms. West, members of FNS management who were respectively terminated for suspected theft and falsification of company records. Moreover, Plaintiff admitted that she never mentioned her race or national origin when she complained about the alleged treatment by Ms. Vargas and Mr. Bart.[4] In light of such admissions by Plaintiff, the ESI requests at issue are even more far-fetched and inapt.

**3.     The Moving Party's Requested Compromise or Resolution of the Issue:**

In accordance with Rule 26(b)(2)(B), Defendant requests that this Court deny Plaintiff's request to compel Defendant to incur any additional costs to further Plaintiff's ongoing and desperate fishing expedition. As explained above, the discovery sought is overly burdensome, costly and simply not proportional to the needs of the case. If Plaintiff maintains her desire to obtain the ESI, Defendant requests that Plaintiff solely bear the cost of retrieval.

DATED this 16th day of December, 2022.

    /s/ Sandra Ketner
SANDRA KETNER, ESQ.
SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, Nevada 89511

---

[3] Mr. Pineda was terminated for suspected theft and inappropriate leadership/communication style on June 29, 2015.
[4] Defendant references and can produce pages 79-81, 96, 132, 141-142 of Plaintiff's deposition transcript at the Court's request.

### CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of SIMONS HALL JOHNSTON PC, over 18 years of age, and that on this date I caused to be served a true copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD MOTION REGARDING DISCOVERY DISPUTE** on all parties to this action by the method(s) indicated below:

X   I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which served the following registered parties electronically:

Arthur J. Bayer, Jr., Esq.
18124 Wedge Parkway, #404
Reno, Nevada 89511
abayerjr@aol.com

Luke Busby, Esq.
316 California Ave., #82
Reno, Nevada 89509
luke@lukeandrewbusbyltd.com

*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct, and that this declaration was executed on December   16  , 2022.

　　　　　　　　　　　　　　　　　　　　　/s/ Carol Elewski
　　　　　　　　　　　　　　　　　　　　　An Employee of Simons Hall Johnston PC