SANDRA KETNER, ESQ.
Nevada Bar No. 8527
SKetner@SHJNevada.com
SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, Nevada 89511
Telephone: (775) 785-0088
Fax: (775) 785-0087

*Attorneys for Defendant Renown Health*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LUCERO SANCHEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>RENOWN HEALTH, a non-profit Nevada Corporation, and DOES 1-20, inclusive,<br><br>    Defendant. | Case No.: 3:21-cv-00352-MMD-CSD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant Renown Health ("Defendant" or "Renown"), by and through its counsel of record, hereby files its Reply in Support of its Motion for Summary Judgment ("Motion") [ECF No. 69]. For the reasons set forth in Defendant's Motion and reiterated below, Defendant requests that this Court enter judgment in its favor on all of Plaintiff's claims. This Reply is made and based upon the following Memorandum of Points and Authorities, the evidence and undisputed facts presented in Defendant Motion [ECF No. 69] and any oral argument that this Court may entertain.

///

///

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff has failed to demonstrate there is a genuine dispute of material fact as to any of her claims that would allow any such claims to proceed to trial. While Plaintiff's Response in Opposition to Motion for Summary Judgment ("Opposition") [ECF No. 77] raises a number of disputes, they are either arguments of counsel and not based upon admissible evidence or are not material to the resolution of this case. Thus, there is no genuine dispute of any material fact that would preclude the entry of summary judgment in Defendant's favor. For the reasons set forth below, this Court should grant summary judgment in favor of Defendant as to all of Plaintiff's claims.

## II. RESPONSE TO PLAINTIFF'S DISPUTED ISSUES OF FACT

"[T]he arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'" *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (quoting *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974)). Indeed, where "factual allegations presented by Plaintiffs are not supported by any citation to the record . . . [i]t is not the role of this court to scour the record in search of evidence to support a parties' position." *Yates v. Washoe Cnty. Sch. Dist.*, No. 03:07-CV-00200LRHRJJ, 2008 WL 4106816, at *1 (D. Nev. Aug. 28, 2008) (citations omitted). Additionally, where this is true, any dispute Plaintiff attempts to create is not genuine because it lacks "a sufficient evidentiary basis. . . ." *Hazelett v. Wal-Mart Stores, Inc.,* 829 F. App'x 197, 200 (9th Cir. 2020).

### A. Plaintiff Fails to Present a Genuine Dispute of Fact Regarding Her Claim of Discrimination Based Upon Race or National Origin

In the Disputed Issues of Fact section of her Opposition, Plaintiff plays fast and loose with the evidentiary basis for her so-called "facts." For example, Plaintiff claims that her "performance reviews show she consistently performed well, handling tasks like creating financial reports, organizing events, and managing cash." Plaintiff's Opposition at 2:13-15 (citing Plaintiff's Ex. 2). However, there is absolutely no reference in Plaintiff's Exhibit 2 to Plaintiff independently "creating

financial reports" or "managing cash" outside of her cashier duties. Instead, Plaintiff's Annual Performance Evaluation dated March 18, 2006 (approximately nine months after German Pineda's termination and four months prior to her work-related injury), states, "Luz has been helping with catering, invoices, end of month report, and cashier duties, and other tasks." Plaintiff's Ex. 2 at SANCHEZ000091. Moreover, Plaintiff's Annual Performance Evaluation the following year, states that Plaintiff can increase her effectiveness by helping "with catering and room set up *when we have events*," thereby recognizing the decrease in and rarity of hosting catering events in 2016-2017. Plaintiff's Ex. 2 at SANCHEZ000098 (*emphasis added*).

Additionally, while Plaintiff testified in response to her counsel's leading question that the FNS Coordinator position was "administrative" (Plaintiff's Ex. 1 at 258:20-22), she also unambiguously testified that she spent only 20% of her time sitting while the other 80% of her time was spent standing, walking, and lifting pans of food and other items weighing up to 35 pounds. **Def.'s Ex. B, Sanchez Depo. at 48:9-51:10, 53:22-54:10; Def.'s Ex. F (FNS Coordinator Position Description; RENOWN000471-RENOWN000475).** Moreover, when Julie Macaluso was asked if Plaintiff's position was "administrative," Macaluso gave the lukewarm response of, "[y]eah, kind of." Plaintiff's Ex. 3 at 20-22. Thus, Plaintiff's statement that "most of Sanchez's tasks were desk-based, with minimal physical exertion required" (Plaintiff's Opposition at 2:19-20) is not supported by <u>any</u> admissible facts.[1]

Likewise, there is no evidentiary support for Plaintiff's contention that Christina Vargas made a statement about Mexicans during an October 2014 meeting, that the statement was made in front of Plaintiff, or that Justin Bart found the comment amusing. Plaintiff's description of the alleged comment in her Opposition clearly embellishes the statements made by Kathy West in her affidavit (Plaintiff's Ex. 4). However, of note is West's statement that Vargas also spoke to her in a rude and dismissive manner. Plaintiff's Ex. 4 at ¶8. Importantly, Defendant does not dispute that it received reports of Vargas being mean, unkind, and condescending to others with whom she worked.

---

[1] Plaintiff also testified that she spent an estimated 1.5-2 hours per week completing paperwork after Pineda's termination, which would equate to 5% or less of a 40 hour workweek. **Def.'s Ex. B at 105:12-106:10, 118:5-9.**

In fact, Vargas resigned from her employment with Defendant in lieu of termination because she did not correct her behavior. **Def.'s Ex. H at 15:4-7, 22:25-23:12, 24:8-16, 48:1-23**. However, Plaintiff's reliance upon the words "hostile" and "hostility" cited in deposition testimony simply does not equate to a finding of unlawful harassment. Plaintiff patently ignores the essential element that a "*hostile* work environment" must "be based on race, color, religion, sex (including sexual orientation, gender identity, or pregnancy), national origin, older age (beginning at age 40), disability, or genetic information (including family medical history)." www.eeoc.gov/harassment. With the exception of West's statement that she reported Vargas' October 2014 comment about Mexicans to Cohen and Oetjen (which they deny), there is no evidence that any other complaints about Vargas's behavior were tied to, based upon or related in any way to any employee's protected class. **Def.'s Ex. G at 43:11-24, 47:9-23.** Importantly, Plaintiff has failed to authenticate many of the exhibits attached to her Opposition, including Defendant's investigation file regarding Vargas' behavior (Plaintiff's Ex. 23) which also contains layers of hearsay statements that are inadmissible for purposes of summary judgment. *Vannah v. Lincoln Gen. Ins. Co.*, 2013 WL 12129940, at *1 (D. Nev. July 30, 2013) (stating authentication is a condition precedent to admissibility and only admissible evidence can be considered on a motion for summary judgment).[2]

As Plaintiff admitted in her deposition, there is no evidence that Plaintiff related her single complaint about Vargas to her membership in a protected class. **Def.'s Ex. B at 141:13-142:1.**[3] While Plaintiff's citation to the deposition testimony of Suzanne Oetjen and other witnesses is difficult to follow given multiple inaccuracies coupled with the absence of pinpoint citations,[4] Oetjen

---

[2] Pursuant to Rule 56(c)(2), Defendant objects to the statements contained in Plaintiff's Exhibit 23 (including but not limited to RENOWN008104-RENOWN008106 containing alleged statements from Vargas to Nanette McCall, from McCall to West, and from West to whoever authored the document) as inadmissible hearsay within hearsay which cannot be relied upon for summary judgment. Fed. R. Evid. 801(c); Fed. R. Civ. P. 56(c)(1)(B)-(2); *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir.1999) (stating that for hearsay-within-hearsay to be admissible, "each layer of hearsay must satisfy an exception to the hearsay rule").

[3] It is unclear from Plaintiff's Response whether she contends that her report to Mark Behl was a complaint of harassment, thereby contradicting her deposition testimony that she made one complaint to human resources about Vargas. **Def.'s Ex. B at 127:24-128:15.** Regardless, there is no indication that Plaintiff told Behl she was being treated a certain way because of her race or national origin. **Def.'s Ex. P at SANCHEZ001453-SANCHEZ001455.**

[4] Federal Rule of Civil Procedure 56 requires a party to support a fact by "citing to particular parts of materials in the records, including depositions . . . ." Fed. R. Civ. P. 56(c)(1)(A). While Plaintiff technically complied with Local Rule

...(cont'd)

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

unmistakably testified that Plaintiff's complaint focused solely on the way Vargas requested keys to Plaintiff's office, which Plaintiff felt was not appropriate. **Def.'s Ex. H at 16:8-21.** Oetjen also unmistakably testified that following her receipt of Plaintiff's complaint, she followed up with Vargas and "asked that she maintain professional behaviors toward her employees." **Def.'s Ex. H at 18:10-22.** Therefore, Plaintiff's contention that the record lacks any evidence that Oetjen did anything in response to Plaintiff's complaint (Plaintiff's Opposition at 3:24-27) blatantly ignores and misrepresents the undisputed evidence presented in this case. Furthermore, Plaintiff's claim that she reported the alleged incident to Oetjen "in late 2015" (Plaintiff's Opposition at 3:21-22) is not supported by the evidence and is contradicted by Plaintiff's own diary entries that reflect the meeting occurring on July 10, 2015. **Def.'s Ex. P at SANCHEZ001444-SANCHEZ001445; Def.'s Ex. Q at SANCHEZ001267-SANCHEZ001268.**

Regarding Plaintiff's description of Defendant's request to search her vehicle as "a shakedown," it cannot be disputed that Oetjen told Plaintiff at the outset that she was <u>not</u> in trouble. **Def.'s Ex. P at SANCHEZ001449-SANCHEZ001450; Def.'s Ex. Q at SANCHEZ001268-SANCHEZ001269.** It is also undisputed that the only reason Defendant asked to search Plaintiff's vehicle was due to a report that Pineda was seen entering and removing items from Plaintiff's vehicle. **Def.'s Ex. M at ¶¶3-5.** Finally, it is undisputed that Plaintiff voluntarily agreed *without objection* to the search. **Def.'s Ex. H at 52:19-21; Def.'s Ex. M at ¶6;** Plaintiff's Ex. 1 at 244:18-23.

Plaintiff admitted that she was under suspicion as a result of her affiliation with Pineda and West. It is not disputed that Pineda was terminated for suspected theft. **Def.'s Ex. N at 26:14-16; Def.'s Ex. O.** It is also not disputed that Defendant suspected Plaintiff was involved in Pineda's theft as a spy and by processing invoices to conceal his theft. **Def.'s Ex. L at ¶12; Def.'s Ex. N at 28:16-25.** Pineda even called Plaintiff immediately after his termination warning her to "be careful."

---

IA 7-3(e) by citing to a specific page of an exhibit, Section B17.1.2 of the Bluebook states that an author should provide "a precise reference to the cited document, such as to the page and line on which the material appears in a deposition or trial transcript" and provides the example "Clark Dep. 15:21-16:4." Thus, Defendant maintains that Plaintiff failed to comply with the requirements of Rule 56 by citing to particular parts of deposition transcripts which she contends support her statement of facts.

**Def.'s Ex. B at 64:8-18.** Not only was Plaintiff described as Pineda's "right hand," Plaintiff's co-workers confirmed her involvement in the processing of invoices and other paperwork for Pineda's food orders. **Def.'s Ex. I at 9:20-23, 17:6-9, 25:20-25, 42:11-43:1; Def.'s Ex. J at 17:24-18:17.** When asked to explain why she believes she was being asked to perform certain tasks which she claims to be discriminatory, Plaintiff plainly testified:

> Q: Okay. Why do you think they were asking you to do that kind of work?
> . . .
> A: They were doing it in the form of humiliation towards me.
> Q: Okay. Why do you think that was occurring?
> A: I think that was occurring because for some reason I was paying for if Kathy West did something wrong or German did something wrong, I was the only one left there to, to treat the way they treated me.
> Q: Okay.
> A: I think they were kind of like payback - -
> Q: Oaky.
> A: - - for something.
> Q: For what?
> A: For whatever German and Kathy did.

**Def.'s Ex. B at 264:25-265:16.** Plaintiff also clearly admitted:

> Q: And you believe that after their terminations that you were then under suspicion as a result of your affiliation or relationships with each of Mr. Pineda and Kathy West?
> A: Yes.

**Def.'s Ex. B at 81:11-15.**

Plaintiff misplaces her reliance upon Pineda's testimony regarding Vargas throwing a radio into the trash and conveniently leaves out a pertinent part of his response (Plaintiff's Opposition at 5:10-16). When asked if there was any indication as to why Vargas threw the radio into the garbage, Pineda testified there was not. Pineda further testified that while the employees were very scared of Vargas, no one ever reportedly felt like Vargas treated them differently because of their national origin. Plaintiff's Ex. 7 at 75:10.

Regarding Plaintiff's discontinued use of an office, there is no evidence that the event occurred in June of 2016 as Plaintiff contends (Plaintiff's Opposition at 5:17-18). Rather, Plaintiff's own diary entries reflect that she was asked to vacate the office on January 7, 2016, so that Kristin Foley could begin using the office the following day. **Def.'s Ex. Q at SANCHEZ001272**. At the

time she was asked to vacate the office, Plaintiff had admittedly been primarily performing cashier duties for at least six months (i.e., July 2015). **Def.'s Ex. B at 116:10-22; Def.'s Ex. 1 (Sealed) at 178:14-16.** In fact, Plaintiff admits in her Opposition that "she had already been fulfilling" the cashier position at the time her compensation was reduced to align with the role (Plaintiff's Opposition at 9:1-5). Finally, Plaintiff cannot rely upon Macaluso's speculation regarding the reason why Plaintiff was asked to vacate the office because Macaluso is not a member of management and lacks personal knowledge of the issue. Plaintiff's Opposition at 9:9-16.

### B. Plaintiff Fails to Present a Genuine Dispute of Fact Regarding Her Disability Discrimination Claim

In her Opposition, Plaintiff's addresses only the time periods when she had physical restrictions following her July 2016 work-related injury and conveniently leaves out all of the periods when she was not under any lifting, standing or walking restrictions. Importantly, Plaintiff's allegations in her Charge of Discrimination regarding Defendant's alleged failure to accommodate her purported disability are limited to the following:

> In the summer of 2016, I suffered a workplace injury which resulted in my care provider requesting that I be placed on light duty, and I was not to lift more than ten pounds. However, Respondent continuously required that I work outside my restrictions from the summer of 2016 to the fall of 2017.

**Def.'s Ex. Y.** Moreover, NERC Investigator Brown testified that the only restriction identified in the Charge which Plaintiff claimed was not accommodated by Defendant (and therefore, the only claim investigated by NERC) was a 10 pound lifting restriction. **Def.'s Ex. 11 (Sealed) at 97:24-98:4, 98:14-20.**

According to Plaintiff's uncontested medical records, Plaintiff was restricted from lifting 10 pounds for negligible periods of time and certainly was <u>not</u> under lifting restrictions "from the summer of 2016 to the fall of 2017." More specifically, Plaintiff was restricted from lifting 10 pounds for a mere two-week period of time immediately following her injury from July 27, 2016 to August 11, 2016. **Def.'s Ex. 2 (Sealed).** For the next nine months, Plaintiff had <u>no</u> lifting restrictions whatsoever imposed upon her. **Def.'s Exs. 2, 4 (Sealed).** It was not until April 2017 that Dr. Sobiek imposed a 10-pound lifting restriction, which continued for three months until

Plaintiff was released from Dr. Sobiek's care with "<u>minimal</u> sitting as needed as her only restriction" on July 5, 2017. **Def's Ex. 1 (Sealed) at 204:11-17, 204:24-205:1; Def.'s Ex. 4 (Sealed) (emphasis added)**.

It cannot be disputed that Plaintiff was under <u>no</u> lifting restrictions between July 5, 2017 through October 4, 2017, when Dr. Sobiek imposed a 20 pound lifting restriction. It is also not disputed that Plaintiff <u>first</u> mentioned to her supervisor at this time that she was allegedly asked to work outside of her restrictions. **Def.'s Ex. 1 (Sealed) at 173:18-174:1, 174:9-25, 212:19-213:2, 213:18-214:4.** On October 13, 2017 (i.e., days after lifting and sedentary restrictions were issued on October 4, 2017 and Plaintiff told her supervisor for the first time that she was working outside of her restrictions), Plaintiff was removed from the cashier position because Defendant could not accommodate the restrictions. **Def.'s Ex. 1 (Sealed) at 216:20-23.** Even though Plaintiff was instructed at her very first appointment at Renown Occupational Health in July 2016 to ask for assistance lifting heavy objects that exceeded her lifting restrictions <u>and</u> she received training from Renown to not lift an object she believed was too heavy, Plaintiff never asked for assistance or notified her supervisor that she was asked to lifting items outside of her restrictions for well over a year. **Def.'s Ex 1 (Sealed) at 156:14-157:14, 164:5-8; Def.'s Ex. 2 (Sealed) at SANCHEZ000526-SANCHEZ000527.**

Like Plaintiff's lifting restrictions, Plaintiff's restrictions from standing and walking also varied considerably throughout the year following her work-related injury. Nevertheless, the undisputed facts demonstrate that Defendant provided a chair located directly behind the cash register for Plaintiff's use and the chair remained available to Plaintiff during the entire time from her acceptance of Defendant's light duty job offer in August 2016 until she transferred to a different department. **Def.'s Ex. 5 (Sealed); Def.'s Ex. 1 (Sealed) at 175:1-19; Def.'s Ex. K at 121:15-122:14.**[5] Importantly, when Defendant's workers compensation department observed Plaintiff on September 29, 2017, Plaintiff's only restriction was minimal sitting as needed.[6] While Plaintiff

---

[5] Plaintiff formally transferred out of the FNS department and to the position of unit clerk on January 15, 2018 (not January 2019 as stated in Plaintiff's Opposition at 16:10-12). Plaintiff's Ex. 29 at 11:15-19.
[6] Plaintiff's 75% sedentary restrictions were not imposed by Dr. Sobiek until October 4, 2017. **Def.'s Ex. 4 (Sealed).**

claims that she was unable to use the chair, she never asked for any assistance from her co-workers and never reported the matter to management for well over a year after her injury. **Def's Ex. 1 (Sealed) at 175:7-177:12; Def.'s Ex. AA at 14:3-14.** Furthermore, witnesses reported seeing Plaintiff both use the chair and seemingly not use the chair on purpose at times. **Def.'s Ex. K at 124:8-14; Def.'s Ex. J at 35:13-36:4.** As previously mentioned, Plaintiff's use of the chair and her restrictions from standing and walking were not exhausted in her Charge of Discrimination or investigated by NERC. **Def.'s Ex. Y; Def.'s Ex. 11 (Sealed) at 97:24-98:4, 98:14-20.**

Regarding the communications between Vargas, Cohen and Lavac concerning Plaintiff's reduction in pay,[7] Defendant acknowledged that it was not appropriate to reduce Plaintiff's pay for the purpose of calculating of Plaintiff's workers compensation benefits because those benefits (i.e., temporary total disability ("TTD") and temporary partial disability ("TPD")) must be paid at the employee's rate of pay at the time of injury. **Def.'s Ex. 8 (Sealed) at 43:12-44:12.** Lavac's email to Cohen stands for nothing more than Lavac's acknowledgment that Lavac "will need to pay the difference in pay/hours for light duty. I can do this from my light duty bucket. But need to calculate the hours." Approximately three weeks later on September 18, 2017, Lavac notified Plaintiff that she reviewed all of the hours that Plaintiff received TTD or TPD benefits and recalculated those hours to be paid at Plaintiff's hourly rate at the time of injury ($16.95/hour). **Def.'s Ex. Z.** Importantly, Defendant's human resources believed that Plaintiff's workers compensation claim was closed and Plaintiff had been released to full duty at the time she was formally transferred to the cashier position with the associated pay rate. **Def.'s Ex. G at 32:4-19.** Defendant's decision to issue backpay for the miscalculation of Plaintiff's workers compensation benefits and Lavac's testimony and correspondence regarding the subject is based strictly upon workers compensation statutory requirements and entirely unrelated to any ADA issue. **Def's Ex. 8 (Sealed) at 44:19-45:6; Def.'s Ex. H at 35:14-36:4.** Plaintiff is overreaching in her suggestion that Lavac's correspondence and testimony relates to anything other than compliance with workers compensation statutory requirements as it is undisputed that Plaintiff remained in the cashier

---

[7] Plaintiff's citations to the record on this issue do not support the statements of disputed fact made in her Opposition.

position earning the lower rate of pay for any non-light duty hours that she actually worked in the cashier position. **Def.'s Ex. G at 37:24-38:15; Def.'s Ex. H at 40:15-41:9, 42:6-10, 42:18-22.**

There is no evidence (medical or otherwise) to support Plaintiff's statement that her health continually worsened "primarily" because Defendant did not adhere to the medical recommendations for light duty work (Plaintiff's Opposition at 15:16-18). As stated in Defendant's Motion, both of Plaintiff's knee surgeons (Dr. Sobiek and Dr. Shukla) testified that even if Plaintiff's physical restrictions were exceeded, Plaintiff's work duties at the café did not causally result in the need for surgical intervention. **Def.'s Ex. 9 (Sealed) at 73:18-74:4; Def.'s Ex. 10 (Sealed) at 63:19-65:6, 66:21-67:2, 74:5-14.** Likewise, even Plaintiff's retained expert witness (Dr. Rappaport) shied away from stating that Plaintiff's surgeries were the direct and causal result of Plaintiff exceeding physical restrictions. Instead, Dr. Rappaport testified that the initiation of Plaintiff's osteoarthritis was caused by the original industrial accident and her condition would be expected to progress with time. Plaintiff's Ex. 28 at p. 4. For example, Plaintiff formally transferred to the unit clerk position in January 2018 and underwent a total right knee replacement surgery nearly three years alter in February 2021. Plaintiff's Ex. 29 at 11:15-23.

### III.  LEGAL ARGUMENT

#### A.  Plaintiff Cannot Establish Race/National Origin Discrimination or Harassment

In her Opposition, Plaintiff completely abandons her disparate treatment claim, choosing instead to focus solely on the elements of a claim for harassment. Nevertheless, Plaintiff cannot demonstrate the essential element of a disparate treatment claim that similarly situated employees outside of her protected class were treated more favorably. The undisputed facts show that Plaintiff was the only employee to hold the FNS Coordinator position and Renown South Meadows was the only Renown facility to have such a position. **Def.'s Ex. L ¶8; Def.'s Ex. 8 (Sealed) at 19:10-14.** Because Plaintiff cannot point to any comparators who were treated more favorably, she cannot establish a *prima facie* claim for discrimination. Moreover, the undisputed evidence demonstrates that Vargas was pleasant and respectful to Lupe Aguilar but not to Caucasian employees like West and Bart. **Def.'s Ex. B at 112:22-113:6; Def.'s Ex. K at 132:24-133:24;** Plaintiff's Ex. 4 at ¶8.

While Plaintiff claims in her Opposition that she was subjected to intimidation of a racial

nature, she presented no evidence to support that statement. For example, there is no evidence that Plaintiff heard Vargas' alleged statement to Bart about Mexicans. Moreover, there is no evidence that Plaintiff witnessed Vargas throwing the radio into the trash (even though there is no evidence that the underlying reason for doing so was in any way related to race or national origin). "Harassment directed towards others of which an employee is unaware can, naturally, have no bearing on whether she reasonably considered her working environment abusive." *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).

Notably, Pineda denied that employees felt like Vargas treated them differently because of their national origin and all employees who provided testimony in this case or were interviewed following Defendant's receipt of Plaintiff's Charge equally denied that they were harassed or discriminated by Vargas based on race or national origin. Plaintiff's Ex. 7 at 75:10; Plaintiff's Ex. 22; **Def.'s Ex. I at 58:18-61:8; Def.'s Ex. J at 20:12-19, 37:18-38:4; Def.'s Ex. K at 136:25-137:16, 139:12-141:21.** Indeed, Plaintiff admitted that she has no evidence to support her speculation that any of Bart's or Vargas' alleged conduct was based upon her race or national origin. **Def.'s Ex. B at 144:9-145:17.**

There is no evidence that Vargas' alleged poking of Plaintiff's hand holding the keys to the safe was in any way related to Plaintiff's race or national origin. Rather, the evidence strongly suggests that Vargas wanted the keys due to suspicions of Plaintiff's involvement in Pineda's suspected theft. **Def.'s Ex. L at ¶12**. Notably, Plaintiff knew that management wanted her to stay away from her office so that they could examine records related to Pineda's suspected theft but she completely disregarded those instructions and accessed her office anyway. **Def.'s Ex. B at 100:3-101:12, 105:12-106:10, 118:5-9.** When Plaintiff reported the alleged incident to Oetjen, she admittedly did not mention or otherwise relate the incident to her race or national origin. **Def.'s Ex. B at 141:13-142:1.** Nevertheless, this single incident is certainly not sufficiently severe to create a hostile work environment. Furthermore, the incidents documented by Plaintiff in her diary (the purpose of which was to document her "most important" allegations) are neither related to her race or national origin or sufficiently severe or pervasive to create an actionable claim for harassment. **Def.'s Ex. B at 136:7-138:9, 139:21-140:2; Exs. P-Q.**

SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, NV 89511
Phone: (775) 785-0088

Perhaps most damaging to Plaintiff's harassment claim are her repeated admissions that any alleged mistreatment she may have experienced was not based upon her race or national origin but was rather directly related to her affiliation with Pineda and West. **Def.'s Ex. B at 79:21-80:2; 81:11-15; 264:25-265:16.** In fact, Plaintiff wrote in her diary that she felt uncomfortable with the way she was being treated "because [she] had a close working relationship with Kathy West and German." **Def.'s Ex. P at SANCHEZ001439.** Because the undisputed facts demonstrate that Plaintiff cannot succeed on her claims for discrimination or harassment based upon her race or national origin, summary judgment should be entered in Defendant's favor on Plaintiff's first cause of action.

### B. Plaintiff Cannot Establish Disability Discrimination

Plaintiff's contention that there is no evidence of Defendant engaging in the ADA's interactive process is absurd considering Plaintiff's admission that she was provided with a chair to use while cashiering shortly after she sustained her July 2016 work-related jury until she transferred to a different department more than a year later, which was corroborated by her co-workers. **Def.'s Ex. 1 (Sealed) at 166:1-167:1, 175:1-19; Def.'s Ex. 5 (Sealed); Def.'s Ex. J at 32:5-16; Def.'s Ex. K at 121:15-122:14; Ex. 8 (Sealed) at 18:19-19:2, 20:22-21:1.** Moreover, following receipt of Plaintiff's permanent restrictions for her right knee issued by Dr. Sobiek on July 5, 2017, Defendant extended a reasonable accommodation offer to sit as needed, which Plaintiff accepted on or about July 21, 2017. **Def.'s Ex. 1 (Sealed) at 205:6-206:8; Def.'s Ex. 6.** Additionally, Defendant extended another reasonable accommodation offer to Plaintiff after Dr. Sobiek issued restrictions in October 2017 for her left knee requiring a 75% sedentary position and no lifting over 20 pounds, which Plaintiff accepted. **Def.'s Ex. 7 (Sealed).** Thus, Defendant unquestionably engaged in the interactive process and provided reasonable accommodations to Plaintiff.

Despite the accommodations provided by Defendant, Plaintiff claims to have worked outside of her restrictions. However, Plaintiff chose not to notify any member of management that she was working outside of her restrictions until October 2017. **Def.'s Ex. 1 (Sealed) at 173:18-174:1, 174:9-25, 212:19-213:2, 213:18-214:4.** Plaintiff admittedly never reported or even tried to report to either Bart or Vargas that she was working outside of her restrictions. **Def.'s Ex. 1 (Sealed) at**

**175:23-176:19.** Likewise, Plaintiff never discussed the issue with human resources. **Def.'s Ex. B at 153:3-25.** Thus, it is Plaintiff who failed to participate in the interactive process in good faith, not Defendant.

Irrespective of Plaintiff's ability to use the chair provided by Defendant, the law is clear that Plaintiff is barred from pursuing a cause of action based upon claims that were not administratively exhausted and/or investigated by NERC or the EEOC. "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). Thus, "the specific claims made in district court ordinarily must be presented to the EEOC." *Id.* In general, allegations are not considered exhausted unless they "fell within the scope of either the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of a charge of discrimination." *Brooks v. ATC/VANCOM, Inc.*, 2007 WL 1063059, at *3 (D. Nev., April 4, 2007).

Here, the plain language of Plaintiff's Charge as well as Investigator Brown's testimony indisputably reflects that Plaintiff's failure to accommodate claim is based upon Defendant's alleged failure to accommodate her lifting restrictions. **Def.'s Ex. Y; Def.'s Ex. 11 (Sealed) at 97:24-98:4, 98:14-20.** Plaintiff has not disputed that lifting restrictions were imposed upon her during the first two weeks following her injury and then not again until April 2017. Clearly, Plaintiff was not a "qualified individual with a disability" immediately following her injury when all physical restrictions were temporary. **Def.'s Ex. 2 (Sealed).** Even Plaintiff's 10 pound lifting restrictions imposed in April 2017 were temporary and were only in effect for a mere three months. **Def.'s Ex. 4 (Sealed).** When Dr. Sobiek issued permanent restrictions to Plaintiff on July 5, 2017, he did not include any lifting restrictions. Therefore, the Court's attention should be focused on whether Plaintiff was a "qualified individual with a disability" during the time that her physician imposed lifting restrictions (i.e., July 27-August 11, 2016, and April 6-July 5, 2017) and if so, whether Defendant failed to accommodate such restrictions.

NERC's probable cause determination is not admissible to establish liability in this action. See *Hakanson-Black v. United Pac. Ins. Co.*, 865 F.2d 264 (9th Cir. 1988) (citing *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488 (9th Cir.1986) (reasoning that where the EEOC's

determination reported the employer had in fact discriminated against the employee, as opposed to probable cause existed to believe discrimination had occurred, that was more prejudicial and its admissibility had to be decided by the district court). Nevertheless, should the Court consider NERC's determination, it is clear that NERC's determination is not supported by the undisputed evidence presented in this case. NERC Investigator Brown admitted that Plaintiff did not have any lifting restrictions between August 11, 2016-April 6, 2017, and was therefore free to lift 40-50 pounds during those time periods. **Def.'s Ex. 11 (Sealed) at 23:5-8, 24:2-7, 24:16-22, 25:6-12, 27:20-22, 28:15-18, 29:10-30:1, 31:24-32:2, 33:10-12, 38:11-39:7.** Investigator Brown acknowledged that Plaintiff had lifting restrictions imposed beginning on April 6, 2017, but such lifting restrictions were removed as of July 5, 2017, and not reimposed until October 4, 2017. **Def.'s Ex. 11 (Sealed) at 38:24-40:8, 41:4-9, 43:1-12, 44:1-4, 44:20-46:1.** More importantly, Investigator Brown readily admitted that Plaintiff did not in fact have 10 pound restrictions for the year long period between the summer of 2016 and fall of 2017 thereby directly undermining the sole basis of NERC's probable cause determination. **Def.'s Ex. 11 (Sealed) at 68:10-17.** As a result, NERC's determination should be completely disregarded by this Court on summary judgment as it is unreliable and not supported by the record.

Defendant maintains that Plaintiff was aware she was not to lift items that exceeded her restrictions but did so anyway, never asking for assistance or notifying her supervisor that she was asked to lift items outside of her restrictions. **Def.'s Ex 1 (Sealed) at 156:14-157:14, 164:5-8; Def.'s Ex. 2 (Sealed) at SANCHEZ000526-SANCHEZ000527.** The evidence shows that when Plaintiff did finally notify her supervisor that her restrictions were being exceeded, she was promptly removed from the cashier position within days and subsequently transferred to a sedentary position within her restrictions. **Def.'s Ex. 1 (Sealed) at 216:20-23; Def.'s Ex. 7**; Plaintiff's Ex. 29 at 11:7-19. Therefore, the undisputed evidence does not support a finding that Defendant failed to accommodate Plaintiff but instead demonstrates that Plaintiff's damages, if any, are due solely to her own actions and disregard for her obligations under Defendant's policies and the ADA to keep her employer informed of her condition. Accordingly, this Court should enter summary judgment in Defendant's favor on Plaintiff's second cause of action.

### C.   Plaintiff Cannot State A Claim for Retaliation

There is no evidence to support Plaintiff's claim that she "voiced concerns about discrimination and unfair treatment" to Oetjen.  Plaintiff's Opposition at 25:6-8.  Importantly, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009).  Therefore, Defendant maintains, and the undisputed facts reflect, that Plaintiff did not relate her report of Vargas allegedly poking her hand to her race or national origin for it to qualify as protected activity under Title VII.  **Def.'s Ex. B at 141:13-142:1.**

Furthermore, there is no causal connection between Plaintiff's report to Oetjen in July 2015 and Plaintiff's permanent assumption of the cashier position nearly 18 months later.  **Def.'s Ex. W.** In *Univ. of Texas Southwestern Med. Cent'r v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517 (2013), the United States Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation" which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360.  In other words, Plaintiff must show that but for her report to Oetjen in July 2015, she would not have been permanently transferred to the cashier position in January 2017.  However, Plaintiff has presented zero evidence to support her contention.  Therefore, Plaintiff has not presented sufficient facts to establish a *prima facie* claim for retaliation under Title VII.

Regardless of Plaintiff's failure to carry her initial burden, the undisputed evidence supports Defendant's legitimate, non-discriminatory and non-retaliatory reasons for Plaintiff's permanent transfer to the cashier position.  By all accounts, the number of catering events at South Meadows was significantly reduced following Pineda's June 2015 termination and the few administrative-type duties performed by Plaintiff were more appropriately assigned to management.  **Def.'s Ex. I at 46:19-22, 47:1-11, 51:12-22; Def.'s Ex. J at 19:2-8, 19:14-18; Def.'s Ex. K at 84:25-85:8, 91:21-92:11; Def.'s Ex. H at 33:22-34:2; Def.'s Ex. L at ¶¶14-16.**  Plaintiff's own admissions indisputably reflect that she began primarily performing cashier duties immediately after Pineda's June 2015 termination.  **Def.'s Ex. B at 116:10-22; Def.'s Ex. P at SANCHEZ001467-SANCHEZ001469; Def.'s Ex. Q at SANCHEZ001273; Def.'s Ex. 1 (Sealed) at 178:14-16.**

Therefore, Defendant's decision to align Plaintiff's position and title with the duties that she had been actually performing for more than a year and half (i.e., June 2015 to January 2017) was clearly appropriate. **Def.'s Ex. 1 (Sealed) at 179:10-16; Ex. W.**

Notably, Plaintiff has not presented any evidence, let alone sufficient evidence, of pretext to satisfy her ultimate burden and allow her retaliation claim to proceed to a jury. Instead, Plaintiff doubts Defendant's reason for transferring Plaintiff to the cashier position simply because Defendant formally articulated the basis in response to Plaintiff's Charge allegations. "A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielson Media Research*, 658 F.3d 1108, 1112-13 (9th Cir. 2011). When a plaintiff presents only indirect evidence, a plaintiff can only satisfy his burden to demonstrate pretext by producing "'specific' and 'substantial' facts." *Id.* at 1113 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)). Here, Plaintiff has not presented any *evidence* that Defendant's explanation is not credible or otherwise contrary to the evidence. In fact, Defendant's explanation has consistently been presented and is supported by the undisputed evidence presented in this case. Therefore, summary judgment should be entered in Defendant's favor on Plaintiff's retaliation claim.

In her Opposition, Plaintiff tries to assert a claim for retaliation under the ADA. However, it is clear from Plaintiff's First Amended Complaint that her third cause of action for retaliation is based squarely upon and limited to an alleged violation of Title VII. [ECF No. 5 at 11:6-12:16]. In fact, there is absolutely no mention of the ADA in her third cause of action or any allegation of Plaintiff engaging in an activity protected by the ADA that could serve as a basis for retaliation. *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472 (9th Cir. 2015)(discussing the distinct claims of Title VII retaliation and ADA retaliation). Therefore, Plaintiff cannot assert such a claim at this late stage of the proceedings after discovery has been closed and dispositive motions are submitted for this Court's consideration. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 & n.19 (9th Cir. 2011) (concluding plaintiff's claim "was not properly before the district

court" where plaintiff first raised it in opposition to summary judgment); *see also Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (observing that "[s]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."); *see also Quan v. San Francisco Police Dep't*, No. C 10-01835 MEJ, 2011 WL 2470477, at *5 (N.D. Cal. June 21, 2011) (collecting cases that reason amending a complaint after summary judgment briefing is improper, prejudicial, and should be rejected). Nevertheless, the reasons for Plaintiff's transfer to the cashier position remain the same – i.e., to align her position and title with the duties she had been performing for over a year and half following Pineda's termination. Accordingly, this Court should enter summary judgment in Defendant's favor on Plaintiff's third cause of action for retaliation.

### E. Plaintiff Cannot Succeed on Her Claim for IIED

In her Opposition, Plaintiff fails to present evidence of any "extreme or outrageous conduct" to support her claim for IIED. Instead, Plaintiff relies primarily upon the elimination of the FNS Coordinator position and the corresponding reduction in her compensation. However, a plaintiff in an employment case must present evidence of conduct that goes beyond typical employment actions even if such employment actions are discriminatory or retaliatory. *See Welder v. Univ. of Southern Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (reasoning that personnel management activity such as hiring, firing, project assignments, promotions and demotions, performance evaluations and other similar acts are insufficient to support a claim for IIED). Plaintiff has not done so thereby warranting the dismissal of her IIED claim. Notably, the FNS Coordinator position has not been re-filled. **Def's Ex. K at 92:12-15; Ex. BB.**

As a secondary basis for her IIED claim, Plaintiff contends that her "requests for reasonable accommodations, in line with multiple medical recommendations, were frequently ignored or inadequately addressed." (Plaintiff's Opposition at 26:22-24). However, Plaintiff ignores her own admission that she never requested a reasonable accommodation from human resources and never told management that she was working outside of her restrictions until October 2017 – after which she was promptly removed from the cashier position and reassigned. Therefore, Plaintiff has again failed to present evidence to support her claim for IIED.

Finally, Vargas' so-called poking of Plaintiff's hand, even if true, is not sufficient to warrant the presentation of Plaintiff's IIED claim to a jury. *See* Restatement (Second) of Torts § 46 comment d (1965) (stating that the conduct must go beyond all possible bounds of decency, is atrocious and utterly intolerable). Moreover, Plaintiff's IIED claim should also be dismissed because it is based upon the exact same conduct which serves the basis for her Title VII claim and for which she had an adequate statutory remedy. *Salehian v. Nevada State Treasurer's Off.*, 618 F. Supp. 3d 995, 1014 (D. Nev. 2022). Accordingly, judgment should be entered in Defendant's favor on Plaintiff's IIED claim.

## IV. CONCLUSION

Based upon the foregoing, Defendant respectfully requests that this Court enter summary judgment in its favor on all of Plaintiff's claims.

DATED: December 4, 2023

    /s/Sandra Ketner  
SANDRA KETNER, ESQ.  
SIMONS HALL JOHNSTON PC  
690 Sierra Rose Drive  
Reno, Nevada 89511