SANDRA KETNER, ESQ.
Nevada Bar No. 8527
SKetner@SHJNevada.com
SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, Nevada 89511
Telephone: (775) 785-0088
Fax: (775) 785-0087

*Attorneys for Defendant Renown Health*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LUCERO SANCHEZ,<br><br>Plaintiff,<br><br>vs.<br><br>RENOWN HEALTH, a non-profit Nevada Corporation, and DOES 1-20, inclusive,<br><br>Defendant | Case No.: 3:21-cv-00352-MMD-CSD<br><br>**MOTION FOR RECONSIDERATION** |

Defendant Renown Health ("Defendant" or "Renown"), by and through its counsel of record, hereby moves for reconsideration of the Court's Order denying Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim alleging a violation of Title VII of the Civil Rights Act of 1964. (ECF No. 81). This Motion is made and based upon the following Memorandum of Points and Authorities, the evidence and undisputed facts presented in Defendant's Motion for Summary Judgment (ECF No. 69), Plaintiff's Response in Opposition to Motion for Summary Judgment (ECF No. 77), Defendant's Reply in Support of Motion for Summary Judgment (ECF No. 80) and any oral argument this Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Local Rule 59-1(a), "[a] party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood." LR 59-1(a). Moreover, while motions for reconsideration are disfavored, reconsideration may be

appropriate if the court committed clear error or the initial decision was manifestly unjust. LR 59-1(a)-(b).

Here, Defendant seeks reconsideration of the Court's denial of summary judgment on Plaintiff's retaliation claim based primarily upon the Court's pretext analysis. In the Order, the Court repeatedly states that Plaintiff need only present "very little evidence of pretext" citing the Ninth Circuit Court of Appeals' decision in *Stegall v. Citadel Broadcasting Company*, 350 F.3d 1061 (9th Cir. 2003). (ECF No. 81 at 13:1-2, 13:3, 14:14-15, 14:16-17). Defendant acknowledges that *Stegall* notes, when evaluating whether a defendant's articulated reason for an adverse employment action is pretextual, "[t]he standard is relatively low." *Stegall,* 350 F.3d at 1072. Defendant further acknowledges that *Stegall* quotes the Ninth Circuit's decision in *Sischo-Nownejad v. Merced Cmty Coll. Dist.*, 934 F.2d 1104 (9th Cir. 1991), stating "[w]e require very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a 'searching inquiry' – one that is most appropriately conducted by a factfinder, upon a full record." *Id.* (quoting *Sischo-Nownejad*, 934 F.2d at 1111).

However, the *Stegall* Court did not hold that a plaintiff must present "very little evidence of pretext" to survive summary judgment. Rather, the *Stegall* Court explained that when a plaintiff tries to establish pretext by direct evidence, such evidence need not be substantial to create a triable issue of fact. *Id.* at 1066 (stating "[w]hen the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."); *see also Coghlan v. Amer. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (stating, "[b]ecause direct evidence is so probative, the plaintiff need offer 'very little' direct evidence to raise a genuine issue of material fact." (citation omitted)). But in contrast, if a plaintiff has no direct evidence and can only offer circumstantial evidence that the employer's motives were different from its stated motives, "'specific' and 'substantial' evidence of pretext" is required to survive summary judgment. *Id.; see Coghlan*, 413 F.3d at 1095. The *Stegall* Court allowed the plaintiff's retaliation claim to proceed to trial because she "proffered a substantial amount of specific circumstantial evidence" that her employer's reasons for terminating her were motivated by retaliation. *Id.* at 1065.

In its Motion for Summary Judgment, Defendant set forth the following undisputed facts:

- In May 2005, Plaintiff accepted the position of Catering Coordinator/Cashier and her duties included coordinating and servicing catering events, performing catering duties, daily monetary deposits, coding invoices, and serving as a cashier. (ECF No. 69 at 3:1-14).

- In 2010, the title of the Catering Coordinator/Cashier position changed to FNS Coordinator, but Plaintiff's duties did not change. (ECF No. 69 at 3:21-24).

- No other Renown facility had a FNS Coordinator position and Plaintiff was the only employee to hold that position at South Meadows.  (ECF No. 69 at 4:8-10).

- On June 29, 2015, Renown terminated German Pineda's employment. (ECF No. 69 at 5:11-14).

- On July 10, 2015, Plaintiff reported to Suzanne Oetjen that Christina Vargas poked her hand and told Plaintiff to give her the keys to the safe.  Plaintiff did not mention her national origin or race as the purported reason why Vargas poked her hand or asked for the keys. (ECF No. 69 at 10:9-18).

- Less than two weeks before her report to Oetjen, Plaintiff wrote in her diary, "I feel very uncomfortable the way I am being treated now because I had a close working relationship with Kathy West and German."  (ECF No. 69 at 9:10-12).

- Following Pineda's termination, the number of catering events declined significantly, and administrative-type duties previously performed by Plaintiff were assigned to management. (ECF No. 69 at 12:11-15).

- Some administrative functions previously performed by Plaintiff were immediately assigned to management while other duties were gradually assigned to management.  (ECF No. 69 at 11:12-18, 12:1-7).

- There were no longer paperwork responsibilities for catering events that were no longer being held.  (ECF No. 69 at 11:22-23).

- To the extent that a few catering events were still held, the FNS Supervisor handled those duties.  (ECF No. 69 at 11:23-27).

- Plaintiff consistently began performing cashier duties immediately after Pineda's termination. (ECF No. 69 at 12:8-11).
- Plaintiff reported directly to Rhonda Tu following Pineda's termination and to Kristin Foley beginning in the fall of 2016. (ECF No. 69 at 26-27).
- As the duties of FNS Coordinator were reduced as the number of catering events declined, Plaintiff shared an office with Foley until the FNS Coordinator position was eliminated entirely. (ECF No. 69 at 12:26-28).
- Defendant eliminated the FNS Coordinator position and formally transferred Plaintiff to the position of cashier, effective January 16, 2017. (ECF No. 69 at 12:15-19).
- Defendant told Plaintiff that the transfer was made to align her position and title with the duties she was actually performing (i.e., cashier) and Plaintiff agreed. (ECF No. 69 at 12:20-22).
- To date, the FNS Coordinator position has not been refilled. (ECF No. 69 at 13:23-14:2).

Indeed, the testimony of Plaintiff's co-workers which Defendant cited as support for the significant decline in the number of catering events included:

> Q: Okay. So how many catering events do you think that you would've had when Mr. Pineda was there versus after he was terminated? Like, can you estimate?
> A: Oh. Oh gosh, we - - they - - they did a lot of caterings when Herman was there, and then it just dwindled to nothing.
> . . .
> Q: At the time Ms. Sanchez was transferred from the FNS coordinator position to the cashier position, had those catering jobs dwindled?
> A: Well, they dwindled after Herman left, so I'm going to have to say yes.

(ECF No. 69 at 11:19-21 (citing Ex. I, Macaluso Depo. at 47:1-7, 51:12-22)).

> Q: When Mr. Pineda was terminated, who did the catering and special events?
> A: I think Kristin, Ms. Kristin? Kristin Fole or something.
> Q: Kristin Foley?
> A: Yeah - - yeah, but there were not a lot of events or banquets after that.

(ECF No. 69 at 11:19-21 (citing Ex. J, Hernandez-Guerrero Depo. at 19:2-8)).

> Q: How many catering events do you think you helped Kristin with?
> A: Maybe two. I didn't really help her. Because after Kristin, there was a change of - - they started eliminating having these meetings.

> They were - - I'm thinking because of budget they were eliminating all these caterings. There wasn't really - - they were trying to get rid of them.
> . . .
> Q: Do you know why Ms. Sanchez was transferred from the position of FNS coordinator to the food services cashier position?
> A: From my knowledge, what she told me was her position was eliminated.
> Q: Do you know why the position was eliminated?
> A: I have no idea. I just know that I saw changes in the system, in the - - that the - - everything was starting - - like no more caterers were involved. Like before, let's say we had three to four a day, and then there was - - like it was starting to get slower, and now there's only two a day, you know, and then eventually one a week. So I don't know if they were cutting back. I'm not sure.

(ECF No. 69 at 11:19-21 (citing Ex. K, Aguilar Depo. at 84:25-85:8, 91:21-92:11)).

Additionally, the testimony of FNS management cited by Defendant as the legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's demotion included:

> 15. Following Mr. Pineda's termination, the number of catering and special events at South Meadows drastically declined. Responsibility for the few catering and special events that took place at South Meadows were handled primarily by the FNS Supervisor. As a result, Ms. Sanchez did not have regular catering or special event responsibilities to carry out.
> 16. Even though Ms. Sanchez had very few, if any, responsibilities related to catering and special events, the organization did not reduce her hours. Instead, Ms. Sanchez was directed to perform much needed duties in the café.
> 17. After about a year of Ms. Sanchez primarily performing the duties of cashier in the café as well as the realization that there was no need or desire to increase the number of catering and special events due to budget cuts at South Meadows, Justin Bart and Jessi Russell decided to eliminate the position of FNS Coordinator.
> 18. Although the organization decided to transfer Ms. Sanchez to the cashier position, which she had been primarily performing for over a year since Mr. Pineda's termination. The decisions to eliminate the FNS Coordinator position and transfer Ms. Sanchez to the cashier position were based purely upon legitimate business and operational needs.

(ECF No. 69 at 12:11-19 (citing Ex. L, Affidavit of Christina Vargas at ¶¶15-18)).

> 5. I was involved in the decision to eliminate the position of FNS Coordinator and did so because the Company was not hosting catering or other special events at the South Meadows location. In other words, the duties of the FNS Coordinator position were not being performed and there was no need for the position.
> . . .

> 7. My decision to eliminate the position of FNS Coordinator, which remains eliminated and unfilled today, was based upon legitimate, business needs and operations.

(ECF No. 69 at 12:11-19 (citing Ex. BB, Declaration of Justin Bart)).

Moreover, Defendant cited Plaintiff's deposition testimony admitting that the comments in the Personnel Action Form documenting her transfer were accurate:

> Q: Okay. And in the comments section it states that there was, "no job req needed. Change in title due to alignment of duties being performed by employee," correct?
> A: Yes.
> Q: Okay. And that was accurate from your perspective?
> A: Yes.

(ECF No. 69 at 12:20-22 (citing Ex. 1, Sanchez Depo. (Sealed) at 179:10-16; Ex. W)).

In her Opposition, Plaintiff failed to present a single piece of evidence to dispute the material facts originally stated in Defendant's Motion for Summary Judgment and reiterated above. In fact, Plaintiff admitted in her Opposition that "she had already been fulfilling" the cashier duties prior to her formal transfer. (ECF No. 77 at 9:1-2). In the section of her Opposition addressing her retaliation claim, Plaintiff primarily focused on evidence satisfying the first two elements of a *prima facie* case (i.e., protected activity and an adverse employment action). Additionally, Plaintiff asserted, "[t]he chronological sequence of events, combined with contextual evidence, shows a causal link between Sanchez's protected activities and the adverse actions she faced" – however, Plaintiff failed to point to any such evidence of retaliation and instead reiterated her harassment allegations. (ECF No. 77 at 25:16-18). Without any such evidence, the "chronological sequence of events" indisputably shows that Plaintiff's demotion occurred eighteen months after her protected activity which is not sufficient to establish causation. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124-1125 (9th Cir. 2004) (stating "[b]ecause the two events were separated by a year and a half, the timing alone does not establish connection, and McGinest does not offer any other explanation." (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)).

Although not argued, articulated or presented by Plaintiff in her Opposition, the Court relied upon Plaintiff's generally good performance reviews to find a causal connection between her

protected activity in July 2015 and her demotion eighteen months later in January 2017. (ECF No. 81 at 13:25-14:6). Notably, Defendant never identified Plaintiff's performance as a basis or even a contributing factor to its decision to eliminate the FNS Coordinator position and transfer Plaintiff to the cashier position. Plaintiff received consistently positive performance reviews since at least 2014. (ECF No. 77-2). In fact, Plaintiff received a positive performance evaluation after she was formally transferred to the cashier position, after she filed her Charge of Discrimination, and after she filed this lawsuit. (ECF No. 69 at 13:26-28; ECF No. 77-2). Plaintiff's performance has never been an issue in this case. Rather, the precise issue in this case relates to the specific duties that were needed and/or available for Plaintiff to perform following Pineda's termination. Plaintiff has the burden of proving that she would not have been demoted to the cashier position "but-for" her report to Oetjen in July of 2015. *Univ. of Texas Southwestern Med. Cent'r v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517 (2013). Defendant respectfully submits that Plaintiff has not produced sufficient evidence to survive summary judgment and present her retaliation claim to a jury.

The evidence presented by Defendant indisputably shows that Plaintiff began performing cashier duties immediately after Pineda's termination, the number of catering events at South Meadows significantly declined, and other administrative-type duties were more appropriately assigned to management. Therefore, Defendant transferred Plaintiff to the cashier position because she had been performing those duties for months, most of the FNS Coordinator duties no longer existed due to the significant decline in catering events, and the FNS Supervisor handled the few catering events that still took place.

In her Opposition, Plaintiff did not present any direct evidence of retaliation. Moreover, Plaintiff did not produce or identify a single piece of actual evidence to show that Defendant's stated reasons for transferring Plaintiff to the cashier position were unworthy of credence. *See Graham v. Mirage Casino Hotel*, 2016 WL 5339726 at *2 (Sept. 22, 2016) (stating "[t]he nonmoving party 'may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists.'" (citation omitted)). Instead, Plaintiff argued that Defendant's reasons were "post-textual" because Defendant did not "produce documentation or correspondence before [Plaintiff filed her Charge of Discrimination] that

discussed the decline of catering events or the redundancy of the FNS Coordinator position." (ECF No. 77 at 28:21-28). As Defendant noted in its Reply, "the arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'" *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (quoting *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974)). (ECF 80 at 2:12-15). Nevertheless, and as an aside, while Plaintiff tried to call Defendant's stated reasons into doubt by pure argument, Plaintiff failed to mention that despite issuing two sets of requests for admission, a set of interrogatories and four separate sets of requests for production during the discovery period, Plaintiff never once requested documentation regarding the number of catering events at South Meadows.

Perhaps more importantly, Plaintiff failed to present a single witness to dispute the significant decline in catering events at South Meadows following Pineda's termination. Plaintiff also failed to present a single witness to dispute the decrease in duties that she previously performed as FNS Coordinator due to the decline in catering events. Moreover, Plaintiff failed to present any witnesses to dispute Defendant's legitimate reasons for transferring other administrative duties that Plaintiff previously performed as FNS Coordinator to a member of management. Finally, Plaintiff failed to present any evidence indicating that the FNS Coordinator duties were still needed and otherwise being performed on a full-time basis at South Meadows.

Even though the Court concluded that Plaintiff's Opposition failed to comply with LR IA 7-3(e) and admonished Plaintiff's counsel for describing evidence in general terms without providing any citations to the record (ECF No. 81 at 6:26-28), the Court appears to have based its decision denying summary judgment on a passing statement in Plaintiff's Opposition that failed to provide any citation to the record which would have given Defendant an opportunity to properly respond. Specifically, Plaintiff's Opposition provides the following:

> Sanchez's diary indicates she continued with her catering duties after her demotion and pay cut and at the December 30, 2016 meeting when Jessi Russell demoted Sanchez Russell did not say that the position of FNS Coordinator was being eliminated. See Exhibit P to Defendant's Motion at ECF #69-16 page 34.

(ECF No. 77 at 28:14-17).

Notably, Exhibit P to Defendant's Motion at ECF #69-16 page 34 does not provide evidentiary support for Plaintiff's statement "Sanchez's diary indicates she continued with her catering duties after her demotion and pay cut . . . ." Indeed, Plaintiff's Opposition is entirely devoid of any evidentiary support for that statement. Nevertheless, the Court independently located and relied upon an undated, typewritten entry in Plaintiff's diary to conclude "that there was still catering work to be done, suggesting that Defendant's explanation for the demotion could be pretextual." (ECF No. 81 at 14:17-22). However, the Court's reliance on this document, which was not cited or otherwise identified by Plaintiff in her Opposition, is misplaced.

While most of the entries in Plaintiff's typewritten diary are set forth chronologically, the final page is clearly not sequential. For example, the first ten pages are dated chronologically beginning on June 24, 2015, and concluding on August 24, 2017. (ECF No. 69 at Ex. Q). However, the first entry on the final page, which the Court relied upon (ECF No. 69-17 at 12), reverts back to 2015 when Tu was hired as FNS Supervisor. The second entry, which is not dated, references Foley who began supervising Plaintiff in the fall of 2016 (ECF No. 69 at 26-27). There is no indication from this entry whether the described event (Renown Recognition Day) occurred before or after Plaintiff was formally transferred to the cashier position on January 16, 2017. This entry could have very well been made in the fall of 2016 before Plaintiff's transfer when she still held the position of FNS (or catering) Coordinator.

Furthermore, the Court relies upon this document to arrive at the conclusion that "there was still catering work to be done." However, Defendant did not represent in its Motion for Summary Judgment that not one single catering event ever occurred again at South Meadows after Pineda's termination. Instead, Defendant represented, "[t]o the extent that a few catering events were still held, the FNS Supervisor handled those duties while Plaintiff was directed to cashier (which she had previously performed) or fill other positions so she did not experience a reduction in her work hours." (ECF No. 69 at 11:19-22). Defendant also presented Justin Bart's Declaration which stated that the FNS Coordinator position was eliminated because the company was not *hosting* any catering or other special events at the South Meadows location. (ECF No. 69, Ex. BB at ¶5)(*emphasis added*).

Clearly, Defendant's recognition of employee appreciation day by providing free pizza does not equate to regularly hosting catering and special events nor does it imply a need for a full-time FNS Coordinator.

Even if Plaintiff was asked to deliver pizzas after she was demoted to the cashier position, such evidence does not constitute "specific and substantial evidence to survive summary judgment." As noted in the diary entry, Plaintiff worked a full four hours (i.e., 6:30-10:30) as a cashier before she assisted with delivering pizzas. According to Plaintiff's diary entry, she spent an hour and a half setting up catering carts (10:30-12:00) and then spent an hour delivering a cart to each of the departments because Foley did not know where the departments were located (thereby further indicating that this event occurred early in Foley's tenure as FNS Supervisor). Even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff spending three and a half total hours (10:30-1:00) setting up carts and delivering pizzas for employee appreciation day does not demonstrate that Defendant had a full-time need for a FNS Coordinator and thereby, its articulated reasons for transferring Plaintiff to the cashier position are unworthy of credence.

Moreover, it appears from Plaintiff's diary entry that Foley nevertheless undertook most of the responsibilities for the employee appreciation day celebration. While Plaintiff may have placed pizzas on carts and delivered them to different departments, there is no evidence that Plaintiff organized, scheduled, or planned the event. Likewise, there is no evidence that Plaintiff ordered the supplies or the food, processed payments or invoices, or completed any of the paperwork associated with the event. Simply because Plaintiff may have performed a small portion of the duties that she previously performed as FNS Coordinator on one single occasion celebrating employee appreciation day does not negate or otherwise call into question Defendant's stated reasons for eliminating the FNS Coordinator position and transferring Plaintiff to the cashier position.

The facts presented in this case are similar to those presented in *Graham v. Mirage Casino Hotel*, wherein the plaintiff claimed that he was terminated for retaliatory reasons and that his employer's stated reason for his termination (i.e., failure to improve according to a performance improvement plan) was not the true reason for his discharge. The plaintiff attempted to establish pretext by presenting testimony from subordinates that he improved in the area of communication.

1 However, this Court recognized that the plaintiff's improvement in one area of the performance 2 improvement plan (even if exponentially improved) did not equate to improvement in the other areas 3 of the multi-point improvement plan. *Id*. at *3-4. This Court concluded that such evidence did not 4 create a dispute about a material fact and granted the employer's motion for summary judgment. 5 This Court had noted in its decision that a plaintiff "must do more than simply show that there is 6 some metaphysical doubt as to the material facts" and that "[t]he mere existence of a scintilla of 7 evidence in support of the plaintiff's position will be insufficient." *Id.* at *2 (citations omitted).

8 Similarly, Plaintiff's single assignment to deliver pizza lasting a total of three and half hours 9 does not create a dispute of material fact to prevent the entry of summary judgment on Plaintiff's 10 retaliation claim. Again, there is no evidence to dispute the unequivocal testimony of all witnesses 11 who reported that catering events significantly declined after Pineda's termination. Additionally, 12 there is no evidence to dispute that the FNS Supervisor handled the administrative-type duties 13 previously assigned to the FNS Coordinator as well as the few catering events that took place. 14 Indeed, both Hernandez and Aguilar testified that Foley handled the few catering events that 15 occurred after Pineda's termination. In her Opposition, Plaintiff failed to produce any evidence that 16 Defendant still had a need for a full-time FNS Coordinator or that it did not actually eliminate the 17 position. Plaintiff's diary entry is not sufficiently specific or substantial to create a material issue of 18 fact warranting the denial of summary judgment on Plaintiff's retaliation claim. *See Opara v. Yellen*, 19 57 F.4th 709, 724 (9th Cir. 2023) (stating "where 'abundant and uncontroverted independent 20 evidence' suggests that 'no discrimination . . . occurred,' plaintiff's 'creat[ion of] only a weak issue 21 of fact as to whether the employer's reason was untrue' will not suffice." (citation omitted)).

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

Accordingly, because Plaintiff failed to present specific and substantial evidence of pretext and the undisputed material facts demonstrate that no reasonable juror could conclude Defendant transferred Plaintiff to the cashier position because she complained to Oetjen (rather than because the duties of the FNS Coordinator position were no longer needed due to the significant decline in catering events), Defendant respectfully requests that this Court grant its Motion for Reconsideration and enter judgment in Defendant's favor on Plaintiff's retaliation claim.

DATED this 18th day of March 2024

*[signature]*

SANDRA KETNER, ESQ.
SIMONS HALL JOHNSTON PC
690 Sierra Rose Drive
Reno, Nevada 89511

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of SIMONS HALL JOHNSTON PC, over 18 years of age, and that on this date I caused to be served a true copy of the foregoing **MOTION FOR RECONSIDERATION** on all parties to this action by the method(s) indicated below:

    X    I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which served the following registered parties electronically:

Luke Busby, Esq.
316 California Ave., #82
Reno, Nevada 89509
luke@lukeandrewbusbyltd.com

*Attorney for Plaintiff*

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct, and that this declaration was executed on March 18, 2024.

                      ___/s/*Terri Tribble*_____
                      An Employee of Simons Hall Johnston PC