Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com

*Attorneys for the Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

LUCERO SANCHEZ,

    Plaintiff,

    vs.

RENOWN HEALTH, a Nevada Non-Profit
Corporation, and DOES 1-20, inclusive,

    Defendant.

_____/

Case No. 3:21-cv-00352-MMD-CSD

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR RECONSIDERAITON [ECF No. 83]**

    COMES NOW, Plaintiff Lucero Sanchez (hereinafter "Sanchez" or "Plaintiff") by and through the undersigned counsel, and hereby files the following Response in Opposition to the Motion for Reconsideration [ECF #83] filed by Defendant RENOWN HEALTH, a Nevada Non-Profit Corporation on March 13, 2024, challenging the Court's Order denying summary judgment in favor of Renown on Plaintiff's Title VII retaliation claim [ECF No. 81].

## MEMORANDUM OF POINTS AND AUTHORITIES

### a. Renown's Motion

    In its Motion, Renown argues that the Court's denial of summary judgment was based on the pretext analysis, with the Court stating that Plaintiff only needed to present "very little evidence of pretext" to survive summary judgment.  Renown argues

1

1 that the Court misinterpreted the standard for establishing pretext and that Plaintiff

2 failed to present sufficient evidence to support her retaliation claim.

3 Renown also argues that it presented undisputed facts in their motion

4 supporting the decline in catering events at South Meadows, the transfer of

5 administrative duties to management, and Plaintiff's admission that she had already

6 been fulfilling cashier duties prior to her formal transfer.  Renown argues that Plaintiff

7 failed to present any evidence to dispute the material facts presented by Defendant

8 or to establish a causal link between her protected activity and her demotion.

9 LR 59-1 governs motions for reconsideration. Such motions are disfavored and

10 must state with particularity any points of law or fact the court overlooked or

11 misunderstood, as well as any newly discovered evidence or changes in legal/factual

12 circumstances warranting relief. Reconsideration is only appropriate if there is new

13 evidence unavailable earlier, the court committed a clear error or the initial decision

14 was manifestly unjust, or there is an intervening change in controlling law. Motions

15 cannot simply repeat prior arguments.  Renown's Motion plainly violates LR 59-1 as

16 it is nothing more than a re-argument of its prior Motion for Summary Judgment and

17 an invitation to the Court to invade the provenance of the jury and to reweigh genuine

18 issues of fact it already decided in its Order denying Renown's Motion for Summary

19 Judgment.

20 **b.  Standard of Review**

21 The Seventh Amendment of the U.S. Constitution prohibits the denial of the

22 right to a jury trial. Juries, rather than judges, determine the outcome of factual

23 disagreements. FRCP 56 permits summary judgment only where there is no genuine

24 dispute as to any material fact and the movant is entitled to judgment as a matter of

25 law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the evidence

26 is of a nature that a reasonable jury could potentially reach a decision in favor of the

27 party not seeking summary judgment, there exists a bona fide factual dispute. *Sierra*

28 *Medical Services Alliance v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (quoting

1   *Anderson*, 477 U.S. at 248).  In deciding a summary judgment motion, the evidence

2   must be construed "'in the light most favorable to the opposing party,'" and the court

3   must also "draw inferences in favor of the nonmovant." *Tolan v. Cotton*, 134 S. Ct.

4   1861, 1866 (2014); accord. *Holley v. Techtronic Indus. N. Am.*, 812 F. App'x 517, 517

5   (9th Cir. 2020).  In a motion for summary judgment, all reasonable factual inferences

6   must be construed in favor of the party opposing the motion. This includes considering

7   both direct and circumstantial evidence. *Coghlan v. Am. Seafoods Co. LLC*., 413 F.3d

8   1090, 1095 (9th Cir. 2005); cf. *Baker v. Roman Catholic Archdiocese*, 725 F. App'x

9   531, 532 (9th Cir. 2018) (failure to "properly consider various pieces of circumstantial

10   evidence" warrants reversal).

11       In order to prevail on her Title VII retaliation claim, Sanchez must show: (1) she

12   participated in an activity protected under Federal law, that is complained about the

13   discrimination she faced; (2) that Renown subjected the Sanchez to an adverse

14   employment action, and (3) that Sanchez was subjected to the adverse employment

15   action because of her participation in a protected activity. See *Hutton v. Elf Atochem*

16   *N. Am., Inc.,* 273 F.3d 884, 891 (9th Cir. 2001). *Yartzoff v. Thomas*, 809 F.2d 1371,

17   1375 (9th Cir. 1987).

18       As pointed out by the Court in its Order at ECF No. 81, citing *Villiarimo v. Aloha*

19   *Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) to establish a prima facie case of

20   retaliation, a Plaintiff must demonstrate that: (1) the plaintiff participated in an activity

21   protected by law; (2) she suffered an adverse employment action; and (3) there is a

22   causal connection between the protected activity and the adverse action.

23   Subsequently, the burden of production shifts to the employer to articulate legitimate,

24   non-retaliatory reasons for the adverse employment decision. If the employer meets

25   this burden, the plaintiff must then show a genuine issue of material fact that the

26   employer's stated reason is merely a facade for retaliation. *Stegall v. Citadel Broad.*

27   *Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), as amended (Jan. 6, 2004)*.* The Court also

28

noted, citing *Stegall*, that Plaintiff is only required to present "very little" evidence of pretext:

> Moreover, "we require very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a 'searching inquiry' -- one that is most appropriately conducted by a factfinder, upon a full record." *Id.* We have often stated that, because motivations are difficult to ascertain, such an inquiry should be left to the trier of fact: "An employer's true motive in an employment decision is rarely easy to discern. As we have previously noted, 'without a searching inquiry into these motives, those [acting for impermissible motives] could easily mask their behavior behind a complex web of post hoc rationalizations . . . ."

*Stegall v. Citadel Broad. Co*. at 1072-73 (9th Cir. 2003)(citations omitted).

The record before the Court includes the following evidence:

- Julie Macaluso, who worked as a Nutrition Representative at all relevant times with Sanchez when Sanchez was FNS Coordinator (ECF #77-3 at 7:9), testified that she agreed that Sanchez's job before her demotion was "administrative." Id. at 9:20.

- Sanchez also testified that her position as FNS Coordinator before her demotion was mostly administrative.  ECF #77-1 at 258:20.

- Sanchez also testified at her deposition that after her demotion, she was still doing catering and that her job duties did not change. ECF #77-1 at 258:10:

> Q· · Okay.· And your job title changed as well; is that correct?
> A· · Yes.
> Q· · Okay.· Did your duties at work change?
> A· · No.
> Q· · Okay.· Can you describe what you mean by that?
> A· · So when I came back from when I had surgery, I came back, I was cashiering.· I was doing catering. Basically, everything minus the paperwork and the deposits, did not do that.

- In October 2014, during a meeting about event planning at which the Plaintiff was present, the Plaintiff's immediate boss, Christina Vargas, said, "I hate fucking Mexicans" in front of FNS Manager Justin Bart, who found it amusing. ECF #77-4.

- German Pineda testified that Vargas called Sanchez lazy. See ECF #77-7 at 74:6.

- Pineda testified that he was told by Vargas to refrain from hiring Hispanics because, "She said Hispanics too lazy." ECF #77-7 at 53:11.

- Mr. Pineda also testified that he witnessed an incident where Vargas, when visiting the kitchen at Renown, threw a radio playing Hispanic music into the garbage:  ECF #77-7 at 75:10.

- Susan Oetjen testified that she received a complaint from Sanchez about Vargas. ECF #77-6 at 15:14.

- Oetjen testified that she could not recall whether Sanchez described any physical contact between her and Sanchez and did not recall whether Sanchez told her she felt intimidated by Vargas.  ECF #77-6 at 16:12.

- Ms. Sanchez's complaint to Ms. Oetjen described above, was made in late in 2015 about an incident where Ms. Sanchez was assaulted by Vargas, ECF #77-6 at 15:14

- At her deposition, Sanchez described Vargas physically "poking" her hand (ECF #77-1 at 243:4 and 130:13).

- Sanchez asserted that she informed Oetjen of the incident, which Oetjen confirmed: ECF #77-6 at 16:8.

- The record does not contain any evidence to suggest that Oetjen acted on Sanchez's complaint, despite Renown's being aware of Vargas's severe discriminatory remark about Mexicans in 2014. ECF #77-1 at 243:4 and 130:13

5

- In June of 2016, Sanchez was removed from the office she had used at Renown in carrying out her FNS Coordinator duties for years. ECF #77-1 at 130:18.

- On July 26, 2016, Sanchez tripped over cables, resulting in serious injuries to both of her knees, and reported the accident on the following day, July 27, 2016, as indicated on the C-4 form that Sanchez filled out herself. ECF #77-8.

- Following her injury in July 2016, Sanchez was effectively employed as a cashier. This cashier role was physically demanding and required her to stock heavy items such as cases of drinks, large boxes, cans, and various other merchandise.  See ECF #77-1 at 187.

- On December 30, 2016, Sanchez's job title was formally changed to Food Service Cashier. ECF #77-17 records the change in Sanchez's position from FNS Coordinator, where she earned $16.95 per hour, to FNS Services Cashier with a reduced hourly wage of $14.48, effective December 29, 2016.  ECF # 77-17 does not indicate the reason for the demotion, other than: "change in title due to alignment of duties being performed by employee."  Under Section D, "Change of Status," no box explaining the demotion was entered.  *Id.*

- ECF #77-17 The document was prepared by Jessi Russell (who has since changed her last name to Cohen) and was authorized by Susan Oetjen. Vargas is also listed on the document as the second supervisor of Sanchez.  As indicated therein, on January 16, 2017, Sanchez's pay was adjusted to the lower rate of $14.48 per hour.

- After reviewing several emails between Jessi Russell and Christina Vargas related to "reclassifying" Sanchez as a Cashier, Workers Compensation Manager at Renown Shawn LeVac testified that she was

not included in the discussion about whether Sanchez was to be demoted. ECF #77-18 at 36:1.

- Although Renown has denied being aware of Vargas's bias against Mexicans, a claim not addressed in the Confidential Investigation Report ECF #77-22, it provided "Investigation documents regarding Christina Vargas" as ECF #77-23.

- Within these documents in ECF #77-23, there is a recorded interview with Renown employee Kathy West by Renown HR from August 28th 2014. In this interview, West recounts that Vargas expressed to another Renown employee, "I hate Mexicans." See RENOWN008104 in ECF #77-23.

- Moreover, evidence from ECF #77-23 at RENOWN 008140 confirms that Renown has long been informed of serious issues concerning Vargas, including specific comments expressing hostility towards Mexicans as reported by West.

- Also included in ECF #77-23 at RENOWN008142, is a Notice of Corrective Action for Christina Vargas, dated May 25, 2017, and authored by Jessi Russell. It reiterates many of the concerns, such as her intimidating approach, direct confrontations, and inappropriate language. The document in ECF #77-23 at RENOWN008142 concludes that, based on feedback and her failure to make necessary changes, Vargas' employment was to be terminated effective immediately.

In its Order denying Renown's Motion at ECRF #81, the Court correctly concluded that: (1) Sanchez's report about the poking incident was a report about harassment based on her national origin; (2) Sanchez's report could be causally linked to her complaints about Vargas's behavior to Oetjen, as the demotion occurred subsequent to her complaint. The Court noted that this connection is further supported by the fact that Sanchez typically received positive performance evaluations, provided

7

at ECF #77-2, despite the amount of time that elapsed between the complaint and the demotion.  The Court specifically noted in its Order at ECF #81 at 14, Sanchez noted in her diary that she continued to be called the 'catering coordinator' and was tasked with catering duties in 2017, ECF No. 69-17, page 12. And that this occurred after she was demoted and had her pay cut at the end of 2016, See ECF No. 77-17, page 2.

Renown cites *McGinest v. GTE Serv. Corp*., 360 F.3d 1103, 1124-1125 (9th Cir. 2004), a case involving an alleged failure to promote on account of retaliation in support of its Motion. Renown argues that Plaintiff's demotion occurred eighteen months after her protected activity which, Renown claims, is not sufficient to establish causation.   However, the ruling expressed *McGinest* applies in cases when a substantial gap between two events discounts a causal link, especially when no additional supporting evidence is provided, citing *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1065).   Here, Sanchez cites a litany of additional evidence.   In *McGinest,* the 9th Circuit dismissed a retaliation claim because McGinest was unable to produce sufficient evidence that the stated reason for failing to promote him was a pretext.

To prevail, Sanchez needed only to demonstrate her participation in a protected activity, an adverse employment action by Renown, and a causal connection between the two. As the Court noted in its Order at ECF No. 81, and drawing upon *Villiarimo v. Aloha Island Air, Inc*. and *Stegall v. Citadel Broad. Co*., only minimal evidence is required to show pretext on the part of the employer.

The evidence includes testimony from Julie Macaluso and Sanchez herself, confirming that her pre-demotion role was primarily administrative (ECF #77-3 at 7:9 and ECF #77-1 at 258:20). In 2014, Vargas made a discriminatory remark in the presence of Sanchez and others (ECF #77-4). German Pineda's testimony detailed Vargas's derogatory comments towards Hispanics and her inappropriate behavior (ECF #77-7 at 53:11 and 75:10). Susan Oetjen's testimony confirmed receiving a complaint from Sanchez regarding Vargas (ECF #77-6 at 15:14), while the incident of

physical "poking" reported by Sanchez to Oetjen is supported by Sanchez's deposition (ECF #77-1 at 243:4 and 130:13).

Furthermore, the significant change in Sanchez's work conditions, including the removal of her office and her subsequent demotion and pay cut (ECF #77-17 and ECF #77-1 at 130:18), without evidence of Oetjen's action upon Sanchez's complaint, points to retaliation by Vargas. Levac's testimony about emails about reclassifying Sanchez's position (ECF #77-18 at 36:1) and the investigation documents regarding Christina Vargas (ECF #77-23), which included West's testimony about Vargas's expression of hatred towards Mexicans (ECF #77-23 at RENOWN008104) as early as 2014, corroborate Sanchez's claim that Vargas demotion and cutting Sanchez's pay was retaliatory, not simply a result of a lack of catering events at Renown South Meadows. While Renown claims that the number of catering events declined significantly, and administrative-type duties previously performed by Plaintiff were assigned to management, it never provided evidence why this occurred and why Renown felt compelled to cut Sanchez's pay and demote her, despite her many years of service to Renown.

The Court's conclusion that Sanchez's report about the poking incident and other complaints could be causally linked to the adverse actions taken by Renown is well supported by the evidence (ECF No. 81). Even after her demotion, Sanchez was still referred to as the 'catering coordinator' and tasked with associated duties (ECF No. 69-17 at 12 and ECF No. 77-17 at 2), which shows that the demotion was been in name and pay only, a pretext for retaliation.

WHEREFORE, Reconsideration of the Court's Order denying Renown's Motion Summary Judgment under Local Rule 59-1 is not warranted, as Renown's Motion simply demonstrates that it disagrees with the Court's determinations as to the meaning and weight of the evidence, not that the Court overlooked or misunderstood the law or the facts.  The Plaintiff requests that the Defendant's motion be denied.

///

RESPECTFULLY SUBMITTED this Friday, April 12, 2024

By:___/s/ Luke Busby, Esq. _____
Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

1

**CERTIFICATE OF SERVICE**

2

3          Pursuant to FRCP 5(b), I certify that on the date shown below, I caused service

4    to be completed of a true and correct copy of the foregoing document by:

5    _____          personally delivering;

6    _____          delivery via Reno/Carson Messenger Service;

7    _____          sending via Federal Express (or other overnight delivery service);

8
9    _____          depositing for mailing in the U.S. mail, with sufficient postage affixed
                      thereto; or,

10
     ___x___          delivery via electronic means (fax, eflex, NEF, etc.) to:
11

12        Sandra Ketner
          Of Counsel
13        SIMONS HALL JOHNSTON PC
          690 Sierra Rose Dr. Reno, NV 89511
14        T: 775.785.0088 | F: 775.785.0087
15

16
     By: ____/s/ Luke Busby, Esq. _____          Dated: __April 12, 2024____
17   LUKE A. BUSBY, ESQ.
     SBN 10319
18   316 California Ave.
     Reno, NV 89509
19   775-453-0112
     luke@lukeandrewbusbyltd.com
20   Attorney for the Plaintiff
21

22

23

24

25

26

27

28

11